**UNITED STATES of America,
Appellee,**

v.

**Clarence Edward NEVILLE, Appellant.**

**No. 74–1708.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 31, 1975.

Decided May 20, 1975.

Rehearing and Rehearing En Banc
Denied June 11, 1975.

---

**1304**

Edward M. Genson, Chicago, Ill., for appellant.

Terry Adelman, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON, Chief Judge, and LAY and ROSS, Circuit Judges.

GIBSON, Chief Judge.

Defendant Clarence Edward Neville appeals his jury convictions on seven counts for violations of the Dyer Act.[1] He was sentenced by the District Court[2] to concurrent terms of five years in prison on counts 1, 3, 5, 6 and 7 and to five years imprisonment on counts 2 and 4, consecutive to the other counts but concurrent with each other, for an aggregate of ten years, and fined $35,000.

On appeal the defendant challenges (1) the court's instruction permitting the jury to convict him for knowingly transporting rebuilt trucks containing undefined "major parts" of stolen vehicles; (2) the sufficiency of the evidence to identify the stolen trucks, to prove they were "motor vehicles," or to prove defendant's knowledge that they were stolen; (3) the court's instruction permitting the jury to infer guilty knowledge from defendant's unexplained possession of recently stolen property; (4) the admission of evidence of other crimes; and (5) the admission of evidence allegedly obtained unconstitutionally. We affirm.

Neville is an experienced automobile and truck salvage dealer and rebuilder who has operated for fifteen years in the Springfield, Illinois, area. He concentrates on late model trucks and carries a large inventory of new and used parts and used trucks. In March and April of 1973 he attempted to sell through a St. Louis auto auction seven stolen pickup trucks disguised to appear as used vehicles legitimately titled. A total of fourteen trucks were involved in the scheme. Seven "clean" trucks were legally obtained by Neville—one purchased new through an accomplice, the other six in wrecked condition. He removed their factory marked frames and all other identification markings and transferred them to seven stolen trucks whose frames and identification markings he had removed and destroyed. He and his employees then drove four of the trucks from Illinois to St. Louis, Missouri, and consigned them to the Floyd Hauhe Auto Auction for sale.

The auction company guarantees title to all trucks sold by it and reserves the right to inspect the vehicles before they are sold. Suspicious of the legitimacy of

---

1. 18 U.S.C. § 2312 (1970). That section reads:

   Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. The Honorable John K. Regan, United States District Judge for the Eastern District of Missouri, passed sentence September 13, 1974.

the titles to the trucks, the manager of the auction contacted the Missouri State Highway Patrol. On April 20, 1973, Sergeant Mudd of the Missouri State Highway Patrol received the keys and titles to the four late model trucks and proceeded to inspect them.

Inspection revealed that the frames (which contain confidential or hidden identification numbers) had all been changed. Also, the federal warranty sticker was missing on each truck, even though one truck showed only 594 miles on its odometer. The trucks were seized and subsequent investigation revealed them to be stolen trucks disguised with lawfully obtained frames and markings. Three other stolen trucks previously sold by Neville through the auction in March, 1973, were similarly traced.

Neville claimed to have purchased six of the seven trucks in wrecked condition and rebuilt them for sale. The seventh he claimed to have received in trade. All seven appeared to be lawfully registered in Neville's name but none showed any signs of repair or body work; none was properly identified with all factory and registration markings; none matched the description of the original truck registered with the same identification numbers; and two of the seven carried no identification numbers at all. At trial the owners of six of the seven stolen trucks positively identified them as their own, and government witness Harold Stewart, Neville's accomplice, admitted stealing the remaining truck and delivering it to Neville in 1972.

I. The defendant's primary challenge is to the court's instruction permitting the jury to convict as to each count if it found that the defendant transported rebuilt trucks in interstate commerce knowing that they had been reconstituted by combining the "major parts" of stolen vehicles with parts of other vehicles.[3] Relying on United States v. Bishop, 434 F.2d 1284 (6th Cir. 1970), and United States v. Wallace, 361 F.2d 494 (6th Cir. 1966), defendant argues that he was prejudiced by the court's failure to define "major parts" to guide the jury in determining whether the trucks Neville was accused of transporting contained the requisite stolen parts to constitute them stolen "motor vehicles" within the meaning of the Act.

18 U.S.C. § 2311 (1970) provides that " 'motor vehicle' includes an automobile, automobile truck, automobile wagon, motorcycle, or any other self-propelled vehicle designed for running on land but not on rails." "Major parts," however, are not independently defined in the Act. The District Court's charge to the jury tracked the statutory definition of "motor vehicles," but did not independently define or list their "major parts." The Government submits, and we agree, that no further definition of the term "major parts" is required. It is sufficient to show under the statute "that only some of the major parts of the vehicle in question were stolen." United States v. Stettmeier, 465 F.2d 436, 437 (9th Cir. 1972) (major parts of stolen aircraft). Once the trial judge delivers a legally accurate jury charge, as here, "the extent of its amplification must rest largely in his discretion." United States v. Bayer, 331 U.S. 532,

---

**3.** The court instructed the jury in pertinent part as follows:

> The term "motor vehicle" includes an automobile, truck, or any self-propelled vehicle designed for running on land but not on rails.
>
> * * * * * *
>
> It is an essential element of the crime charged that the pickup trucks involved had been "stolen." In determining whether the pickup trucks had been stolen, the Court instructs the Jury that whenever one person's motor vehicle is acquired or is thereafter possessed * * * with the intent to deprive the owner of the right and benefits

of ownership, such motor vehicle is "stolen" as that term is used in these instructions.

> In this connection you are instructed that *if you find as to any count that the motor vehicle described therein was stolen and that thereafter the major parts of said stolen motor vehicle were combined with the major parts of one or more other motor vehicles into one rebuilt motor vehicle which was thereafter transported in interstate commerce, then you may find that the rebuilt motor vehicle is the stolen motor vehicle described* in said count which the defendant is charged with transporting * * *. (Emphasis added.)

536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654 (1947). We find no evidence that the jury misunderstood the charge and no abuse of discretion in this case.

"Major parts" is a commonly used conversational term without a technical meaning in this statutory context; it is not a word of art. Its meaning is within the jury's knowledge and experience and need not be explained. Indeed, as we have recognized in other contexts, to indulge in variations of statement in order to define otherwise understandable language might well confuse as much as help the jury. Guon v. United States, 285 F.2d 140, 142 (8th Cir. 1960). Moreover, excessive definitions of secondary, nonstatutory concepts might often because of imprecise language contain technical deficiencies that for lack of completeness would enable criminals to argue compliance with the definition, though in actuality violating the statute and its spirit.[4]

■ On the contrary, the Dyer Act is not to be construed so narrowly as to disregard the paramount congressional purpose of curbing commercial interstate traffic in stolen motor vehicles. *See*

United States v. Turley, 352 U.S. 407, 413–14, 77 S.Ct. 397, 400–401, 1 L.Ed.2d 430 (1957). Without "major parts" of a vehicle being encompassed within the definition of "motor vehicles," enforcement of the Act might be foreclosed simply whenever a thief swaps stolen parts before being caught. We believe Congress intended no such impediment to enforcement. United States v. Stettmeier, *supra,* at 437.

In this case we are far from a marginal situation in which only one major part, *i.e.,* a set of wheels, is proved to be stolen. Here, the subject vehicles themselves were all proved stolen and identified. The basic changes made by the defendant on the stolen vehicles were some repainting and substitution of the frames and clean identification plates and numbers of totally wrecked vehicles. Titles from the wrecked vehicles were then used to merchandise the stolen vehicles. Such an obvious loophole need not be provided for fences and dealers in stolen vehicles. The authorities cited by the defendant do not hold to the contrary.[5]

---

4. In many situations a comprehensive definition is impossible to fashion:

> Human language is not so constructed that it is possible to prevent people from misunderstanding it if they are determined to do so, and over-definition for that purpose is like the attempt to rid a house of dust by mere sweeping. You make more dust than you remove. If too fine a point is put upon language you suggest a still greater refinement in quibbling.

3 J. Stephen, *A History of the Criminal Law in England* 305–06 (1883).

5. In United States v. Bishop, 434 F.2d 1284 (6th Cir. 1970), the Sixth Circuit affirmed a Dyer Act conviction for transporting a stolen auto from Ohio to Kentucky. Although the auto was disassembled when finally discovered by federal agents, all of its major parts were found near the defendant's Kentucky home. He admitted carrying the engine block across the state line but claimed to have purchased it. The court noted that:

> [The Act only] makes unlawful the transportation of a "motor vehicle." It does not separately make unlawful the transportation of one of the parts of such a vehicle, knowing it to have been stolen. * * * Even con-

sidering the broad congressional purposes of the Dyer Act, * * * it cannot be said that an engine block, taken by itself may be fairly encompassed within the wording of [the Act].

434 F.2d at 1287.

The court held, however, that the evidence as a whole was sufficient for the jury to find the defendant guilty and approved the inference from his admitted possession of the engine block that he was a party to the interstate transportation of the entire stolen vehicle.

In United States v. Wallace, 361 F.2d 494 (6th Cir. 1966), four years before *Bishop,* the same court summarily affirmed a conviction for the theft and transportation of a reconstituted auto whose major parts were stolen. Appellant Wallace's counsel did not appear for argument. The trial court's opinion recounts the jury instruction that a "motor vehicle" must have an engine, frame and wheels capable of travelling on land and that the body alone is not a "motor vehicle" within that definition. The court of appeals, however, did not comment on the charge or otherwise require a definition of "major parts" as part of the jury charge. United States v. Wallace, 254 F.Supp. 653, 654 (E.D.Tenn.1965), aff'd, 361 F.2d 494 (6th Cir. 1966).

II. Neville also challenges the sufficiency of the evidence to identify the stolen trucks, to prove they were "motor vehicles," and to prove his knowledge that they were stolen. However, after a careful review of the record in a light most favorable to the Government, granting it the benefit of all factual inferences, Whiteside v. United States, 346 F.2d 500, 502 (8th Cir.), cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025 (1965), we conclude that there was not only substantial, but overwhelming, evidence to support the verdict. Moody v. United States, 477 F.2d 548 (8th Cir. 1973).

The first count of the indictment concerned a red 1973 Chevrolet pickup containing a V–8 engine and most available options. Its coded identification number and warranty card, however, indicated that it should have contained only a six cylinder engine and very few optional features. A truck of that description, orange in color, bearing the same identification number, had in fact been purchased from a St. Louis dealer by one Evans in December, 1972. Neville claimed he obtained it from Evans in a trade.

Harold Stewart, however, testified that Neville admitted he and Evans stole the fully equipped red truck and replaced its frame and identifiable parts with those from the less expensive orange truck purchased by Evans. Thus, Neville boasted, they "owned" a fully equipped stolen truck with a legitimate identification number and bill of sale. At trial the true owner of the red truck positively identified his custom camper modifications and wiring installed on the truck before it was stolen. Thus, as to the first count in the indictment, there was adequate evidence for the jury to identify the truck as stolen, to find that even rebuilt it retained enough original

major parts to remain a statutory "motor vehicle," and to conclude that Neville knew it was stolen.

The second count of the indictment identified a maroon 1972 Ford pickup containing a V–8 engine. Its coded serial number, however, also represented a different truck—a green 1971 Ford pickup with a smaller engine salvaged to Neville after being wrecked in a fatal collision in 1972. Harold Stewart identified the maroon 1972 Ford pickup as one he had stolen for Neville from an Illinois Ford dealer in September, 1972, and delivered to Neville after removing and destroying its marked frame and identifying numbers. Thus, as to the second count, there was sufficient evidence for conviction.

In sum, as to both counts there was ample evidence from which the jury could find that Neville, an experienced and successful purveyor and fence of stolen trucks and major truck parts, knowingly transported stolen vehicles in interstate commerce. The evidence against the defendant is equally persuasive and damaging on the other five counts.[6]

III. Neville also challenges the court's instruction permitting the jury to conclude that he knew the vehicles were stolen by virtue of the inference raised by his unexplained possession of the recently stolen property. The Government offered proof that Neville employed parts from salvage vehicles to camouflage and title stolen trucks for resale. Neville's explanation was that he legitimately rebuilt wrecked trucks and claimed not to have known the trucks he sold were stolen. The court instructed the jury that possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which one may reasonably infer that the person in possession knew the property was sto-

---

6. Because we find the evidence of Neville's guilt sufficient to support the aggregate ten year sentence on counts one and two, and because the sentences passed on counts three through seven are effectively concurrent with those of the first two, it is unnecessary for us to consider the sufficiency of the evidence relating to the remaining counts. Barnes v.

United States, 412 U.S. 837, 848 n. 16, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); United States v. Leach, 429 F.2d 956, 960 (8th Cir. 1970), cert. denied, 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 151 (1971); see Benton v. Maryland, 395 U.S. 784, 788–90, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

len, but that no such inference can be drawn if the possession is explained in a manner consistent with the defendant's innocence.[7]

We have recognized the evidentiary rule permitting such an inference as "factually sound and necessary." Aron v. United States, 382 F.2d 965, 970 (8th Cir. 1967). The instruction was a correct statement of the law, see Earnhart v. United States, 135 U.S.App.D.C. 130, 417 F.2d 547 (1969), cert. denied, 397 U.S. 1068, 90 S.Ct. 1507, 25 L.Ed.2d 689 (1970), properly given in the instant circumstances. Harding v. United States, 337 F.2d 254, 256 (8th Cir. 1964).

■ IV. At trial Neville objected to testimony by state police officers describing the proper Illinois and Missouri procedures for affixing vehicle identification plates onto rebuilt trucks on the ground that the challenged testimony, by inference, accused Neville of violating state registration procedures, another crime. We find no error in the admission of the evidence. The testimony was not calculated to infer that the defendant committed another crime but was relevant to the jury's understanding of the crime charged. Rule 401, Fed.R.Ev.;[8] Babb v. United States, 351 F.2d 863, 867 (8th Cir. 1965). Furthermore, the defendant proceeded to develop the matter more extensively in his cross-examination of one of the officers and cannot now be heard to complain that the Government led the jury astray by first mentioning it. Moreover, the defendant failed to object to being cross-examined by the Government as to his own knowledge of the lawful identification procedures.

■ His objection to being cross-examined regarding threats made against government witness Stewart and Stewart's alleged admission of perjury is similarly without merit. It also passed without defense objection at trial and merely developed material which was introduced by the defendant in his direct testimony. It was relevant for his impeachment, Rule 611(b), Fed.R.Ev.; United States v. Olsen, 487 F.2d 77, 82 (8th Cir. 1973), cert. denied, 415 U.S. 993, 94 S.Ct. 1594, 39 L.Ed.2d 890 (1974), and was well within the discretionary limits for cross-examination. United States v. Vaughn, 486 F.2d 1318, 1321–22 (8th Cir. 1973).

■ V. The defendant argues that the warrantless seizure of the four consigned trucks from the St. Louis auction by Sergeant Mudd of the Missouri State Highway Patrol on April 20, 1973, was unreasonable and violated his Fourth Amendment rights. He does not, however, challenge the officer's initial inspection of the trucks at the auction. We find Officer Mudd's subsequent seizure of the trucks to have been reasonable, based upon probable cause to believe that they were stolen, and find no error in the admission of evidence developed from them.

■ Neville surrendered possession of the trucks to the auction for public sale and "assumed the risk" of official examination. Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). As previously noted, the auction company guaranteed title to all vehicles it sells and reserved the right to inspect the trucks before selling them. It therefore had requisite control over the vehicles to request official inspection and to consent to their search. Thereafter, Officer Mudd's seizure of the vehicles was reasonable under the circumstances revealed by the officer's unchallenged initial inspection. Cf. Chambers v. Maroney, 399 U.S. 42, 51–52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The trucks' federal safety stickers and identification plates were loose and appeared not to have been factory attached; there were discrepancies between the trucks' actual engines, options and color characteristics

---

**7.** The challenged instruction is substantially similar to that approved in Barnes v. United States, 412 U.S. 837, 840 n. 3, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973).

**8.** Although the Federal Rules of Evidence, Pub. L.No.93–595 (Jan. 2, 1975), are not effective until July 1, 1975, we feel it appropriate to cite them as a primary source of evidentiary rules where not contrary to case law.

and the characteristics described by their coded serial numbers; the trucks seized were easily moveable and situated at a public auction; and the officer had a statutory duty to impound them.[9]

The defendant also challenges the admission of evidence of overheard telephone conversations consisting of testimony of government witness Stewart recalling telephone conversations he had with the defendant, government cross-examination of the defendant using transcripts of monitored telephone conversations, and testimony by a Decatur, Illinois, police officer reporting a telephone conversation between Stewart and the defendant that he overheard with Stewart's consent. The defendant argues that the officer violated the Illinois anti-eavesdropping statute, Ill.Rev.Stat. ch. 38, §§ 14–1 and 14–2 (1973), in overhearing the conversation, and that admission of any of the telephone evidence was constitutionally improper. The transcripts of the conversations, however, were not admitted into evidence.

We find no error in the admission of any of the evidence of telephone conversations between defendant Neville and government witness Stewart. Gathering evidence by overhearing a telephone conversation with the consent of one party does not violate the other party's Fourth Amendment rights. United States v. White, 401 U.S. 745, 752, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971) (plurality opinion). Misplaced expectations of confidence or trust in an accomplice are not constitutionally protected. Hoffa v. United States, 385 U.S. 293, 302, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Moreover, wiretap or other evidence obtained without violating the Constitution or federal law is admissible in a federal criminal trial even though obtained in violation of state law.[10] On Lee v. United States, 343 U.S. 747, 754–55, 72 S.Ct. 967, 96 L.Ed. 1270 (1952); United States v. Keen, 508 F.2d 986, 989 (9th Cir.), cert. den., 421 U.S. 929, 95 S.Ct. 1655, 44 L.Ed.2d 86 (1975).

The judgments of conviction are affirmed.

---

9. Mo.Rev.Stat. § 301.390 (1969), V.A.M.S., provides in pertinent part:

    1. No person shall sell, or offer for sale, or shall own or have the custody or possession of a motor vehicle * * * on which the original manufacturer's number or other distinguishing number has been destroyed, removed, covered, altered or defaced, and no person shall sell, offer for sale, own or have the custody or possession of a motor vehicle * * * having no manufacturer's number or other original number, or distinguishing number.

    2. Every peace officer who has knowledge of a motor vehicle * * * the number of which has been removed, covered, altered, destroyed or defaced, and for which no special number has been issued, shall immediately seize, [and] take possession of such motor vehicle * * *.

    *    *    *    *    *    *

10. We intimate no view of the propriety of the Decatur, Illinois, police officer's conduct under state law.