UNITED STATES of America, Appellee,

v.

Martin DIAZ, Appellant.

No. 82–1228.

United States Court of Appeals, Eighth Circuit.

Submitted July 15, 1982.

Decided Aug. 19, 1982.

Thomas E. Dittmeier, U. S. Atty., Richard L. Poehling, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Eugene F. Zenobi, Miami, Fla., and Lee Platke, St. Louis, Mo., for appellant, Martin Diaz.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Martin Diaz appeals from a final judgment entered in the District Court[1] for the Eastern District of Missouri, following a bench trial on certain stipulated facts, finding him guilty of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. The district court sentenced Diaz to ten years imprisonment. For reversal Diaz argues that the district court erred in (1) denying his motion to suppress a tape-recorded conversation that occurred in his house, (2) denying his motion to suppress certain tape-recorded telephone conversations, and (3) denying his motion for change of venue. For the reasons discussed below, we affirm the judgment of the district court.

In late May 1981, Larry Wells, an undercover St. Louis police officer assigned to the Drug Enforcement Administration (DEA), arranged through a confidential informant to buy a kilo of cocaine. According to the confidential informant, Hellmuth Konyen and Charles Daroff would deliver the cocaine on June 4, 1981, at St. Louis Lambert International Airport. Wells met Konyen and Daroff at the airport, bought the cocaine, and then identified himself as a federal officer and arrested them on federal narcotics charges. Daroff agreed to cooperate with the DEA and assist in the investigation. Daroff identified Diaz as his supplier in Miami and telephoned Diaz in Miami, allowing Wells to tape-record the telephone conversation. Later Konyen also agreed to cooperate with the DEA.

On June 5, 1981, Daroff tried to telephone Diaz in Miami but only reached an answering machine. Later that day, Daroff again telephoned Diaz and made arrangements to meet the next day in Miami. Wells tape-recorded this telephone conversation. On June 6, 1981, Konyen, Daroff and Wells flew to Miami. Daroff and Wells went to Diaz's house and were admitted by Diaz. Wells was wearing a "body bug" or electronic transmitter. Daroff introduced Wells as his uncle Hellmuth Konyen. Wells then "paid" Diaz over $50,000 for the cocaine which had been delivered in St. Louis.

---

1. The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri.

The conversation was tape-recorded by Juan Perez, a Florida police officer assigned to the Miami DEA office. Diaz was arrested. Following various pretrial suppression motions, Diaz waived trial by jury and was found guilty of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. Konyen and Daroff were named as coconspirators. This appeal followed.

■ Diaz first argues that the district court[2] erred in denying his motion to suppress the tape-recorded conversation between Daroff, Wells and himself that occurred in his house on June 6, 1981. Diaz cites a recent Florida Supreme Court case, *State v. Sarmiento*, 397 So.2d 643, 644 (Fla. 1981) (per curiam), holding that "the warrantless, electronic interception by state agents of a conversation between [the] defendant and an undercover police officer in [the] defendant's home [was] an unreasonable interception of [the] defendant's private communications" in violation of the Florida constitution. Diaz notes the similarity between the facts in *Sarmiento* and the present case and stresses that the intercepting officer here was a Florida police officer.

Had this prosecution been brought in the Florida state courts, it would appear that Diaz's argument would have had some merit. However, this is a federal criminal prosecution. "[W]iretap or other evidence obtained without violating the Constitution or federal law is admissible in a federal criminal trial even though obtained in violation of state law." *United States v. Neville*, 516 F.2d 1302, 1309 (8th Cir.) (footnote omitted), *cert. denied*, 423 U.S. 925, 96 S.Ct. 269, 46 L.Ed.2d 251 (1975). "Neither the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents with the consent of one of the conversants." *United States v. Caceres*, 440 U.S. 741, 744, 99 S.Ct. 1465, 1467, 59 L.Ed.2d 733 (1979) (footnote omit-

ted) (defendant's conversations with IRS agent were monitored and recorded by "body bug" worn by IRS agent); *see also United States v. White*, 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (plurality opinion); *United States v. Neville*, 516 F.2d at 1308–09. Here, the requisite consent was supplied by undercover officer Wells.

Diaz next argues that the district court erred in denying his motion to suppress certain tape-recorded conversations. Diaz argues that the government failed to carry its burden of showing that Daroff consented to the monitoring and tape-recording of his telephone calls to Diaz in Miami. In particular Diaz argues that the government failed to call Daroff as a witness at the suppression hearings and as a result denied him due process of law. Diaz also argues that Daroff's cooperation and consent were coerced. We must disagree.

■ "It is well settled that a defendant's Fourth Amendment rights are not violated when the defendant's conversations with a government informant are recorded with the consent of the informant." *United States v. Kirk*, 534 F.2d 1262, 1272 (8th Cir. 1976), *cert. denied*, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); *see also United States v. Rich*, 518 F.2d 980, 984–85 (8th Cir. 1975), *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976); *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974), *cert. denied*, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). The voluntariness of the consent requires an examination of "the totality of the circumstances surrounding the events in question." *United States v. Kirk*, 534 F.2d at 1272, *citing United States v. McMillan*, 508 F.2d at 104 n.2. Here, Wells testified at the suppression hearings that Daroff knew what the DEA agents were doing with the tape-recording equipment and agreed to telephone Diaz knowing that the telephone conversations would be monitored and recorded. This is sufficient to establish consent. *See United States v. Kirk*, 534 F.2d at 1272–73, *citing United States v. McMillan*, 508 F.2d

---

**2.** The district court had referred the suppression motions to United States Magistrate David D. Noce for hearing and recommended disposition, 28 U.S.C. § 636(b). The district court adopted the report and recommendation of the magistrate.

at 104 n.2 ("[I]t will normally suffice for the government to show that the informer went ahead with a call after knowing what the law enforcement officers were doing.").

Wells also testified that Daroff was repeatedly informed of his *Miranda* rights, was not threatened or coerced or promised anything, but was told that he faced multiple narcotics charges and that if he decided to cooperate with the investigation, his cooperation would be made known to the U. S. Attorney's Office and that the U. S. Attorney's Office could in turn inform the judge assigned to the case. Thus, it appears that Daroff consented to cooperate with the investigation because he hoped that his cooperation would favorably influence the U. S. Attorney's Office or the judge. The fact that Daroff agreed to the monitoring and tape-recording of his telephone conversations under these circumstances does not diminish the voluntariness of his consent. *See United States v. Kirk*, 534 F.2d at 1273 (consent in exchange for recommendation to prosecutor); *United States v. Rich*, 518 F.2d at 985 (consent in exchange for promise of immunity from prosecution).

■ We do not agree that the government's showing of consent was fatally flawed by the failure to call Daroff as a witness at the suppression hearings. *Cf. Franco v. State*, 376 So.2d 1168, 1170 (Fla. Dist.Ct.App.1979) (holding that consenting party to recorded conversation must appear as a witness to establish consent), *cert. denied*, 386 So.2d 636 (Fla.1980). Wells was questioned and cross-examined at length about the circumstances surrounding Daroff's arrest, interrogation, consent to cooperate, and cooperation with the investigation. In any event, Daroff was present at the July 27, 1981, suppression hearing and Diaz's attorney could have called Daroff as a witness at that time.

■ Diaz next argues that the district court erred in denying his motion for change of venue. Diaz argues that trial in the Southern District of Floridaent for the parties and witnesses and in the interest of justice. Fed.R.Crim.P. 21(b). Diaz notes that all three defendants are residents of the Southern District of Florida and that the events leading to his arrest all occurred in Florida. Motions for change of venue are matters within the discretion of the district court. *E.g., United States v. Parker*, 530 F.2d 208, 211 (8th Cir. 1976). Venue was appropriate in the Eastern District of Missouri. The delivery of the cocaine took place in the Eastern District of Missouri; "a conspiracy prosecution may be brought in any district in which any act in furtherance of the conspiracy was committed by any of the conspirators even though some of them were never physically present there." 1 C. Wright, Federal Practice and Procedure § 303, at 590 (1969); 18 U.S.C. § 3237(a). Most of the government's witnesses were located in the Eastern District of Missouri. We find no abuse of discretion in the district court's denial of the motion for change of venue.

Accordingly, the judgment of the district court is affirmed.