UNITED STATES of America, Plaintiff–Appellant,

v.

Fernando GUTIERREZ–CHAVEZ, Defendant–Appellee.

No. 87–1522.

United States Court of Appeals, Fifth Circuit.

March 25, 1988.
Rehearing Denied May 3, 1988.

---

* District Judge of the Western District of Louisiana, sitting by designation.

Salvador C. Ramirez, Robert R. Harris, El Paso, Tex., for plaintiff-appellant.

Helen M. Eversberg, U.S. Atty., San Antonio, Tex., Shelley A. Longmuir, Deborah Watson, Atty., Crim. Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before GARWOOD, and JONES, Circuit Judges, and HITTNER *, District Judge.

EDITH H. JONES, Circuit Judge:

Defendant Fernando Gutierrez–Chavez ("Gutierrez") appeals his conviction for conspiracy to import, and conspiracy to possess with intent to distribute, more than 50 kilos of marijuana in violation of 21 U.S.C. § 952(a) and § 841(a)(1). Gutierrez was tried together with two alleged coconspirators, one of whom had signed a confession incriminating Gutierrez and assisted police in taping a conversation between herself and Gutierrez. The confession and tape were admitted into evidence over Appellant's objection and are the subject of this appeal. We affirm.

---

* District Judge of the Southern District of Texas, sitting by designation.

## FACTS

On December 29, 1986, Kathleen Quagliato–Garcia ("Quagliato") and a companion, Jacob Johnson, were arrested while attempting to enter the United States from Mexico after customs officers discovered approximately 350 pounds of marijuana in their camper-truck. While in custody, Quagliato gave DEA agents statements incriminating herself, as well as one José Aguilar and Gutierrez. Quagliato also agreed to make a telephone call to Gutierrez, who was staying in an El Paso motel, and allowed the DEA agents to tape the conversation. The relevant part of the tape-recording was transcribed as follows:

Quagliato: "Well, Don Jose was supposed to meet me in Guadalupe. Right?"

Appellant: "You and Jose aren't worth a damn."

Quagliato: "Why?"

Appellant: "Because you do not do things the way it's supposed to be done. Look, go to Motel 6 and wait for us in the motel."

Quagliato: "In Ontario?"

Appellant: "And don't leave."

Quagliato: "Okay, in Ontario, California."

Appellant: "Huh? Huh?"

Quagliato: "Okay, do you have the number and everything?"

Appellant: "The number, wait, let me get it. Oh, it's downstairs. Are you in a motel now or what?"

Quagliato: "No. I'm in a rest area."

Appellant: "Ok, rest area?"

Quagliato: "Huh?"

Appellant: "Yeah."

Appellant: "No, I don't know the name of the street or where to get off. Oh man, how do we do this job?"

Quagliato: "Well, I'll arrive first and then call you."

Appellant: "But I want to leave in the morning."

Quagliato: "Well, leave in the morning, and the first one in Ontario I'll get off. Or why not the same one as the last time there in—What's the name of it?"

Appellant: "It's too far."

Quagliato: "Oh, then the first 6 there in Ontario."

Appellant: "Yes, it's the only one (unintelligible)."

Quagliato: "Okay."

Appellant: "And there, I'll locate you."

Quagliato: "Okay."

Appellant: (Unintelligible of that name.)

Quagliato: "Okay, and what name are you using there in the motel?"

Appellant: "Fernando."

Quagliato: "Well, the man and the cargo is real full and loaded, and it's heavy."

Appellant: "That, I don't know."

Quagliato: "Heh?"

Appellant: "That, I don't know."

Quagliato: "Look, I'm scared. I think someone has been following me. I'm not sure."

Appellant: "Okay."

Quagliato: "Okay."

Appellant: "Are you in Arizona?"

Quagliato: "Uh, okay, I'll call you later."

Appellant: "Look."

Quagliato: "Huh?"

Appellant: "Because I'm leaving from here very quickly."

Quagliato: "Okay."

Appellant: "Look, let's see how I can find you, but do not cross over."

After the conversation, DEA agents arrested Gutierrez, who was registered under an alias, at the motel. Gutierrez voluntarily told the arresting DEA agent that Quagliato's truck was to go to a motel in Ontario, California.

Quagliato confessed in writing to being a courier or "mule" in this transaction and in four previous transactions with the same group of people.

Quagliato and Gutierrez were tried together. The government sought to admit the confession of Quagliato after redacting it to exclude Gutierrez's name. Prior to trial, Gutierrez filed a motion to sever on *Bruton* grounds, claiming prejudice from admission of the confession. The district court denied the motion. At trial the redacted confession and the taped conversation between Quagliato and Gutierrez were

admitted into evidence over Gutierrez's objections. The district court gave a limiting instruction that the jury could consider the confession as evidence only against Quagliato. Upon his conviction, Gutierrez was sentenced to concurrent, five-year imprisonment terms. This appeal followed.

## ANALYSIS

### I. The Written Confession

The first issue raised by the parties is whether the admission of that part of Quagliato's confession to which Appellant objected deprived the Appellant of his right to cross-examine an adverse witness contrary to the confrontation clause of the sixth amendment. Appellant objected to the portion of the confession in which Quagliato recited that after her arrest "she called (words deleted) at the Budget Inn, room number 306 in El Paso, and he told [me] to go to Ontario, California to the Motel Six, and call him or wait 'til he got there."

The governing legal principles concerning admissibility of explicitly incriminating extrajudicial statements of a nontestifying codefendant at a joint trial are found in *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and its progeny. Last year the Supreme Court elaborated further on the *Bruton* rule in *Richardson v. Marsh,* —— U.S. ——, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), and in *Cruz v. New York,* —— U.S. ——, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

■ We need not speculate here on whether the *Bruton* analysis in *Richardson* [1] was satisfied by the introduction of Quagliato's confession, because, as *Cruz v. New York* reiterated, the erroneous admission of a confession does not necessarily warrant reversal. —— U.S. at ——, 107 S.Ct. at 1719. We stated in *United States v. Basey,* 816 F.2d 980, 1005 (5th Cir.1987), "even if a statement is admitted in viola-

tion of the *Bruton* principle, the error may be harmless if the statement's impact is insignificant in light of the weight of other evidence against the defendant" (citing *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340 (1972)). *See also Cruz v. New York,* —— U.S. ——, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987). We find that other evidence introduced at trial implicating Gutierrez in the crimes charged was indeed substantial enough to render the admission of Quagliato's statement harmless. Appellant asserts prejudice from the jury's ready identification of Gutierrez as the individual Quagliato telephoned at the El Paso Budget Inn Motel, who instructed her to go to a motel in Ontario, California and wait for him there. However, these facts were also conclusively established by appellant's own admissions to the DEA and in the taped conversation between Quagliato and Gutierrez. The Quagliato confession, if the jury disregarded the Court's instructions and considered it against Gutierrez, was simply redundant of the evidence against him.

■ Gutierrez also asserts that the *Bruton* problem entitled him to a severance of trial from Quagliato. A district court's denial of the motion for severance is reviewed under the abuse of discretion standard, and denial of a motion will be reversed only upon a showing of compelling prejudice. *Basey,* 816 F.2d at 1004. A *Bruton* violation may, but does not necessarily, constitute compelling prejudice. *Id.* In analyzing this issue we do not confront the limited objection raised by appellant to the actual admission of Quagliato's confession. So analyzed, and before its redaction, the incriminating nature of the confession more closely approximates a *Bruton* violation, described by *Richardson* as "specific testimony that 'the defendant helped me commit the crime ...'" —— U.S. at ——, 107 S.Ct. at 1707. Nevertheless, the trial

---

1. *Richardson,* undertaking to resolve a split among the circuits, rejected the contention that mere "contextual linkage" between a codefendant's statement and the complaining defendant's criminal participation is alone sufficient to violate *Bruton.* *Richardson* declined to opine on the admissibility of a confession "in which the

defendant's name has been replaced with a symbol or neutral pronoun." —— U.S. at ——, n. 5, 107 S.Ct. at 1709, n. 5. The opinion also states, however, that "the [*Bruton*] calculus changes when confessions that do not name the defendant are at issue." —— U.S. at ——, 107 S.Ct. 1709.

court ordered, and got, a redacted confession that at least did not mention Gutierrez's name in order to defuse the *Bruton* issue. The redaction may not have been ideal. We do not however, for the reasons stated in the harmless error analysis, find an abuse of discretion or compelling prejudice in the court's denial of severance.

## II. Admissibility of the Recorded Conversation

Appellant next asserts that the introduction of Quagliato's portion of their recorded conversation was inadmissible hearsay and its admission into evidence contravened his sixth amendment right to confrontation. He does not challenge the introduction of *his* part of the conversation, which was admitted as a party admission pursuant to Federal Rule of Evidence 801(d)(2)(A).

█ Appellant correctly observes that, because the recorded conversation took place after Quagliato's arrest, her statements were not those of a coconspirator admissible under Federal Rule of Evidence 801(d)(2)(E).[2] However, the Quagliato statements are admissible at least as "reciprocal and integrated utterance(s)" between the two parties, *U.S. v. Metcalf,* 430 F.2d 1197, 1199 (8th Cir.1970), for the limited purpose of putting the responses of the appellant in context and making them "intelligible to the jury and recognizable as admissions." *U.S. v. Lemonakis,* 485 F.2d 941, 948 (D.C.Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). This evidentiary rule concerning tape-recorded conversations between a defendant and a third-party informant or codefendant has been adopted by other circuits confronted with the question. *See also United States v. Jordan,* 810 F.2d 262, 264 (D.C.Cir.), *cert. denied,* — U.S. ——, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987); *United States v. Price,* 792 F.2d 994, 996–97 (11th Cir.1986); *United States v. Whitman,* 771 F.2d 1348, 1352 (9th Cir.1985). Quagliato's statements, then, were not in-

troduced to prove their truth, but rather to prove only that they were uttered. They are to this extent not hearsay, as defined by Federal Rule of Evidence 801(c). *See also* FED.R.EVID. 801(c) Advisory Committee's Note.

The reasoning of *Lemonakis,* moreover, with which we also concur, rejects appellant's confrontation clause argument:

The only incriminating statements of the informant to be taken as true are those which, in the judgment of the jury, were adopted by appellant, and while that does make the informant's statements hearsay evidence, their adoption by the appellant brings them within a long-recognized hearsay exception. (footnote omitted) [*See* FED.R.EVID. 801(d)(2).] *Sparf v. United States,* 156 U.S. 51, 56, 15 S.Ct. 273 [275], 39 L.Ed. 343 (1895). Insofar as hearsay considerations do operate here, we cannot say that the exclusionary principles embodied in the Confrontation Clause nullify the well-established reasons for making such admissions exceptions to the hearsay rule. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970); *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

485 F.2d at 949.

Admission of the tape recording was not erroneous. *See also United States v. Jones,* 839 F.2d 1041, 1051–1052 (5th Cir. 1988) (admission of tape recorded conversations between arrested, cooperating defendant and unarrested coconspirators approved).

## III. Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence to sustain his conspiracy convictions. To respond, we "view the evidence in the light most favorable to the jury verdict, and then determine whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *Basey,* 816 F.2d at 1001.

---

**2.** Federal Rule of Evidence 801(d)(2)(E) provides as follows: "[a statement is not hearsay if the statement is offered against a party and is] a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy." *See* general discussion in *United States v. Ascarrunz,* 838 F.2d 759 (5th Cir.1988.)

■ Appellant's responses in his conversation with Quagliato and his statement to police following his arrest provided ample evidence of his active involvement in the drug smuggling conspiracy. Gutierrez expressed irritation when informed that Quagliato had not met Aguilar (a coconspirator) in Guadalajara as planned. He then instructed her to drive to a specified location which he indicated was different from the destination she had been assigned in the past. The jury could readily deduce that Quagliato and Gutierrez had an ongoing business relationship in which Gutierrez was Quagliato's superior. The jury could also infer from Gutierrez's acknowledgement of Quagliato's fear of being followed that he was aware of the illegal nature of the cargo she was transporting.[3] We therefore find that a reasonable jury could conclude that Gutierrez knew of, and participated in, the activities of the other conspirators based upon the conversation between Gutierrez and Quagliato and Gutierrez's statement when arrested.

The judgment of conviction is AFFIRMED.

**3.** Appellant suggests that his ignorance of the conspiracy was demonstrated by his statement "That, I don't know" given in response to Quagliato's statement concerning the heaviness of the cargo. However, we find this statement to be ambiguous and susceptible to interpretation by a reasonable jury merely as an indication that appellant was unaware of how much marijuana Quagliato had brought into the country.