Dated December 22, 1992.

**UNITED STATES of America, Plaintiff,**

v.

**Michelle F. TANGEMAN, Defendant.**

**No. 4:CR92–3064.**

United States District Court,
D. Nebraska.

March 10, 1993.

MEMORANDUM AND ORDER ON OB-JECTIONS TO REPORT AND REC-OMMENDATION AND ORDER ON MOTION TO SUPPRESS

URBOM, Senior District Judge.

■ The magistrate judge David L. Piester has recommended that the defendant's motion to suppress, filing 13, be denied. The defendant has filed objections to the report and recommendation, filing 22. I resolve the matters to which objection is made de novo from the exhibits and the tape recording of the testimony before the magistrate judge of November 20, 1992.

■ It is true that the testimony of the officer who monitored and recorded each conversation between the informant and the defendant provided convincing evidence of the informant's voluntary consent to the recording of her conversations.

There are promises of leniency in the plea agreement of the informant in return for the informant's cooperation with the government, but the informant's consent is not vitiated by those promises.

The informant did freely and voluntarily consent to the monitoring and recording of her conversations with the defendant. The tapes should not be suppressed on Fourth Amendment grounds.

■ I have fully reviewed the tapes and transcripts of those tapes of conversations between the informant and the defendant and I conclude, as did the magistrate judge, that the informant's out-of-court statements on those tapes are not being offered to prove the truth of the matters in them. The portions of the tapes that are being offered are for the limited purpose of providing intelligible understanding of the incriminating statements made by the defendant during those conversations.

IT IS ORDERED that:

1.   the objections to the report and recommendation, filing 22, are overruled, and

2.   the motion to suppress, containing within filing 13, is denied.

David R. Stickman, Davis, Stickman Law Firm, Omaha, NE, for Michelle F. Tangeman.

Paul D. Boeshart, U.S. Atty., Lincoln, NE, for U.S.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Pending before the court is defendant's motion to suppress tape recordings of conversations between defendant and a government informant. (Filing 13). For reasons discussed more fully below, I shall recommend the motion be denied.

Defendant has been indicted on charges of distributing and possessing with the intent to distribute cocaine. At trial, the government intends to use several tape recorded conversations that occurred between defendant and a government informant, Connie Loos, concerning the distribution of cocaine. A suppression hearing was held on November 20, 1992, and the evidence submitted and adduced at that hearing forms the basis for the background information provided below.

## *BACKGROUND*

During the summer of 1992 the Lincoln Police Department conducted a drug investigation focused upon Connie Loos (the eventual informant in this action). Following the drug investigation, Ms. Loos was approached by Lincoln Police Officer Cindy Arthur about the possibility of becoming a cooperating witness for the government. She expressed an interest in cooperating, and was appointed counsel by this court. Following a number of consultations with appointed counsel, Ms. Loos signed a written plea agreement containing, *inter alia,* a provision that she agree to wear a microphone and transmitter to obtain incriminating evidence against other individuals. (Exhibit 1 at 1).

Shortly thereafter, at the request of the Lincoln Police Department, Ms. Loos (hereinafter "the informant") made four telephone calls to defendant Tangeman for the purpose of setting up personal meetings with defen-

dant.[1] The calls were monitored and recorded by Officer Arthur. Pursuant to arrangements made during the phone conversations, defendant Tangeman twice visited the home of the informant in Eagle, Nebraska. During both visits the informant wore a body microphone and the conversations between the informant and defendant Tangeman were monitored and recorded by Officer Arthur.[2] The informant died of natural causes shortly thereafter.

Defendant Tangeman has filed a motion (filing 13) requesting the tape recordings between herself and the informant (exhibits 3, 4, 5, and 6) be suppressed. In support of this motion defendant argues that: (1) admission of the tapes at trial would violate defendant's Fourth Amendment rights because the informant did not consent to have the conversations monitored and recorded; and (2) introduction of the tapes at trial would violate defendant's rights under the Confrontation Clause of the Sixth Amendment.

### *Fourth Amendment*

It is well settled that a defendant's rights under the Fourth Amendment are not violated when his or her conversations with a government informant are electronically monitored with the informant's consent. *United States v. McMillan,* 508 F.2d 101, 104 (8th Cir.1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). In this instance defendant Tangeman challenges the admissibility of the tape recorded conversations between herself and the informant on grounds the informant's consent has not been shown to be voluntary. Although no factual argument on this issue has been clearly presented in defendant's briefs, defendant appears to suggest the informant was coerced into cooperating with authorities by promises of leniency. (Defendants' Brief at 1).

1. Two conference calls were placed to defendant Tangeman on August 13, 1992 and once defendant Tangeman was on the line, Officer Arthur remained silent and monitored the conversations between the informant and defendant Tangeman while they were being recorded (exhibit 3). Two more calls were placed to defendant Tangeman from the home of the informant; one on August 14, and one on August 24, 1992. Those calls were monitored and tape recorded by Officer Arthur as well. (Exhibits 3 & 5).

2. On the 14th and 24th of August, 1992, Officer Arthur equipped the informant with a body microphone and then went to a vehicle parked outside the informant's home to monitor and record the conversation between the informant and defendant Tangeman. (Exhibits 4 and 6).

To determine the voluntariness of an informant's consent, one must examine "the totality of the circumstances surrounding the events in question." *United States v. Diaz,* 685 F.2d 252, 254 (8th Cir.1982) (quoting *United States v. Kirk,* 534 F.2d 1262, 1272 (8th Cir.1976), *cert. denied,* 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977)). Here, the totality of the circumstances clearly indicates the informant freely and voluntarily consented to the recording of conversations between herself and defendant Tangeman.

First, I note the informant signed a plea agreement which contained an express provision that she agree to wear a microphone and transmitter to obtain incriminating evidence against other individuals.[3] The informant's court appointed attorney testified that she had discussed with her client the provisions of that plea agreement and based upon those conversations it was her opinion that her client knowingly and voluntarily agreed to have her conversations with defendant Tangeman monitored and recorded.[4] The plea agreement was signed by the informant in the presence of Officer Arthur, who testified the informant appeared alert, not impaired, was under no coercion to sign the plea agreement and appeared to do so voluntarily.

Second, some of the recorded conversations contain the informant's express verbal consent to allow Officer Arthur to listen and record the conversation between the informant and defendant Tangeman. *See* exhibit 3.[5] Regarding those remaining conversations where no express verbal consent precedes the recorded conversation, Officer Arthur testified that on each occasion she personally spoke with and observed the informant prior to either placing the recorded telephone calls or equipping the informant with the body microphone. Officer Arthur testified the informant was in no way coerced into allowing the conversations to be recorded, and further testified the informant was aware the conversations were being recorded and at no time expressed any hesitancy or reluctance regarding either the taping of the conversations or the wearing of the body microphone.[6] The informant at all times appeared willing to have the various conversations monitored and recorded by Officer Arthur.

The fact that the informant was aware her conversations were being recorded and voluntarily proceeded to converse freely about the distribution of cocaine with defendant Tangeman is sufficient to establish consent. *See United States v. Diaz,* 685 F.2d at 254 (testimony of law enforcement officer that informant agreed to telephone the defendant knowing the conversation would be monitored and recorded was sufficient to establish consent); *United States v. Kirk,* 534 F.2d at

---

3. The fact that the plea agreement appears unexecuted by the prosecutor is of no moment. The question here is not whether the plea agreement was legally binding on the parties, but rather whether the informant consented to have the conversations taped. The informant's signing of the plea agreement is evidence of such consent.

4. Defendant's Reply Brief suggests that because the informant's attorney invoked the attorney-client privilege periodically throughout the pretrial suppression hearing, not enough was revealed about the voluntariness of the informant's consent to participate in obtaining the incriminating recordings. I disagree. Although the attorney invoked the privilege in response to inquiries seeking specific statements made during privileged discussions with her client, the attorney nonetheless was unwavering in her testimony that she thoroughly discussed the provisions of the plea agreement with her client, that on more than one occasion she and her client discussed the wearing of a body microphone and the recording of conversations between the informant and others, and that based upon their discussions she believed her client freely and voluntarily agreed to act as an informant and have her conversations with the defendant monitored and recorded.

5. I note the two conversations preceded by the informant's express consent were conference calls placed by Officer Arthur first to the informant and then to defendant Tangeman. Possibly due to the nature of the calls and the lack of opportunity to observe the informant prior to listening and recording the conversations, Officer Arthur chose to get the informant's express consent on those calls, although I make no finding to that effect.

6. The informant's willingness to voluntarily allow the taping of face-to-face conversations between herself and defendant Tangeman is evidenced further by Officer Arthur's testimony that the informant appeared pleased with her choice to wear a blouse she believed was baggy enough to conceal the body microphone.

1272–73 (concluding it is normally sufficient for the government to show that the informant went ahead with the call after knowing it was being monitored and taped); *United States v. McMillan,* 508 F.2d at 104 n. 2 (same). However, in this instance the plea agreement, the testimony of appointed counsel and the testimony of the officer who monitored and recorded each conversation between the informant and defendant Tangeman provide additional and convincing evidence of the informant's voluntary consent.

Furthermore, contrary to the defendant's suggestion (Defendant's Brief at 1), it does not vitiate the informant's consent that she may have been promised leniency in exchange for her consent to cooperate with the government by wearing a microphone and transmitter to obtain incriminating evidence against other individuals. *See United States v. Diaz,* 685 F.2d at 255 (concluding the voluntariness of an informant's consent was not diminished by the fact that informant agreed to the monitoring and tape recording of his conversations because he hoped such cooperation would favorably influence the U.S. Attorney's Office or the judge); *United States v. Rich,* 518 F.2d 980, 985 (8th Cir. 1975) (concluding the voluntariness of an informant's consent to the monitoring of his conversations with defendants was not diminished by the fact that he agreed to become an informant in exchange for a promise of immunity from prosecution).

I find, based on the evidence adduced during the pretrial suppression hearing, that the informant freely and voluntarily consented to the monitoring and recording of her conversations with defendant Tangeman. *United States v. Diaz,* 685 F.2d at 254; *United States v. Kirk,* 534 F.2d at 1272; *United States v. Rich,* 518 F.2d at 984; *United States v. McMillan,* 508 F.2d at 104. Therefore, I conclude the tapes should not be

suppressed on Fourth Amendment grounds, and I shall so recommend.[7]

### *Confrontation Clause*

Defendant argues that because the informant is unavailable for cross examination (having died this past August), defendant's rights under the Confrontation Clause would be violated by the admission at trial of the tape recorded conversations.[8]

The Confrontation Clause ensures a criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Clause is violated when hearsay evidence is admitted as substantive evidence against a defendant who has no opportunity to cross-examine the hearsay declarant or when the hearsay statement of an unavailable witness does not bear adequate indicia of reliability. *Kentucky v. Stincer,* 482 U.S. 730, 737, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (citing *Tennessee v. Street,* 471 U.S. 409, 413, 105 S.Ct. 2078, 2081, 85 L.Ed.2d 425 (1985); *Ohio v. Roberts,* 448 U.S. 56, 65–66, 100 S.Ct. 2531, 2538–39, 65 L.Ed.2d 597 (1980); *California v. Green,* 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970)). However, the Supreme Court has made clear that the Confrontation Clause is not implicated by the admission of nonhearsay statements. *See Tennessee v. Street,* 471 U.S. at 413–414, 105 S.Ct. at 2081–82 (concluding the Confrontation Clause was not implicated when confession of non-testifying accomplice was admitted at defendant's trial for a nonhearsay purpose; the out-of-court statement was not offered to prove what happened at the murder scene but rather to rebut defendant's testimony that his own confession was coercively derived from the accomplice). *See also United States v. Inadi,* 475 U.S. 387, 398 n. 11, 106 S.Ct. 1121, 1128 n. 11, 89 L.Ed.2d 390 (1986) (recognizing the admission of nonhearsay statements raises no Confrontation Clause

---

7. I note defendant makes no foundational argument with respect to the tape recorded conversations. I therefore need not address the seven foundational requirements for admitting tape recordings into evidence expressly set forth by the Eighth Circuit in *United States v. McMillan,* 508 F.2d at 104.

8. It appears defendant is challenging the admissibility of those portions of the tapes containing the unavailable informant's out-of-court statements. The portions of the tapes containing the defendant's own recorded statements would, of course, be admissible as nonhearsay admissions under *Fed.R.Evid.* 801(d)(2)(A).

concerns, and noting that certain taped conversations could be admitted without violating the Clause if not offered to prove the truth of the matters asserted, but rather as background for the conspiracy or to explain the significance of certain events).

In this instance defendant has no claim under the Confrontation Clause because, having carefully reviewed the tapes and transcripts thereof, I conclude the informant's out-of-court statements contained on the tapes are not being offered to prove the truth of the matters asserted therein.[9] Rather, the portions of the tapes comprising the informant's statements are being offered for the limited purpose of providing intelligible context for the incriminating statements and admissions made by defendant Tangeman during the taped conversations. *See United States v. Davis*, 890 F.2d 1373, 1379–80 (7th Cir.1989) (concluding the admission of tape recorded conversations between defendant and non-testifying informant did not violate Confrontation Clause because the informant's nonhearsay statements were admitted for limited purpose of providing context for defendant's statements and admissions), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990); *United States v. Gutierrez–Chavez*, 842 F.2d 77, 81 (5th Cir.1988) (concluding admission of recorded conversation between defendant and third party did not violate Confrontation Clause because third party's statements were admitted for limited purpose of putting defendant's responses in context and making them intelligible to the jury and recognizable as admissions); *United States v. Jordan*, 810 F.2d

262, 264 (D.C.Cir.) (admission of recorded conversation between unavailable informant and defendant did not violate Confrontation Clause because informant's statements were not hearsay but rather offered for the limited purpose of making defendant's responses intelligible and recognizable as admissions), *cert. denied*, 481 U.S. 1032, 107 S.Ct. 1963, 95 L.Ed.2d 535 (1987); *United States v. Price*, 792 F.2d 994, 996–97 (11th Cir.1986) (admission of recorded conversation between defendant and informant did not violate Confrontation Clause because informant's statements were not offered to prove the truth of the matter asserted therein, but rather for the limited purpose of making defendant's admissions understandable to the jury).[10]

Use of the informant's recorded statements for a nonhearsay purpose—not to prove the truth of the matters asserted therein but to provide intelligible context for defendant's statements so that they are recognizable to the jury as admissions—raises no Confrontation Clause concerns. *Tennessee v. Street*, 471 U.S. at 413–414, 105 S.Ct. at 2081–82; *United States v. Inadi*, 475 U.S. at 398 n. 11, 106 S.Ct. at 1128 n. 11; *United States v. Davis*, 890 F.2d at 1379–80; *United States v. Gutierrez–Chavez*, 842 F.2d at 81; *United States v. Jordan*, 810 F.2d at 264; *United States v. Price*, 792 F.2d at 996–97. I shall recommend the defendant's motion to suppress the tapes be denied.

IT THEREFORE HEREBY IS RECOMMENDED pursuant to 28 U.S.C. § 636(b)(1)(B), that defendants' motion to suppress tape recordings of conversations be-

---

**9.** Hearsay is, by definition, "a statement ... offered in evidence to prove the truth of the matter asserted." *Fed.R.Evid.* 801(c).

**10.** Because I conclude the informant's statements are being offered for the nonhearsay purpose of putting defendant's admissions into context and making them recognizable to the fact finder as such, I note defendant may be entitled to a limiting instruction to that effect. *See Tennessee v. Street*, 471 U.S. at 412, 417, 105 S.Ct. at 2080, 2083 (trial judge's limiting instruction to the jury was appropriate way to limit the use of third party's statement in a manner consistent with the Confrontation Clause); *United States v. Burton*, 937 F.2d 324, 327 (7th Cir.1991) (in absence of limiting instruction directing jurors to consider statements of non-testifying informant

only for the purpose of putting defendant's statements in context, court declined to construe informant's statements as nonhearsay because it was not clear they were considered as such by the jury); *United States v. Davis*, 890 F.2d at 1380 (trial judge instructed the jury that taped statements of non-testifying informant could be considered only for the limited purpose of providing context to the defendant's recorded admissions, and not for their truth); *United States v. Jordan*, 810 F.2d at 264 (noting that when recorded conversation between unavailable informant and defendant was played to the jury and again in the final instructions, the judge instructed that the tapes were to be considered for the limited purpose of making defendant's responses intelligible).

**1342**

tween defendant and a government informant (filing 13), be denied.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

Dated January 20, 1993.