**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Joseph R. PRICE, Defendant-Appellant.**

No. 85–5392.

United States Court of Appeals,
Eleventh Circuit.

June 27, 1986.

---

Zuckerman, Spaeder, Taylor & Evans, John F. Evans, G. Richard Strafer, Coral Gables, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Helen Forsyth, Nancy L. Worthington, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before VANCE and JOHNSON, Circuit Judges, and ALLGOOD,* District Judge.

---

* Honorable Clarence W. Allgood, U.S. District Judge, Northern District of Alabama, sitting by designation.

ALLGOOD, District Judge:

This case involves an appeal from a verdict of guilty entered against the defendant. The issues presented before the court are centered around possible Sixth and Fifth Amendment violations.

The facts of this case are as follows: On March 8, 1983, the defendant, and then a Task Force Agent, Price, took possession of two tanks of hashish oil at the Miami International Airport after they were seized by a customs inspector. He turned them over to the Drug Enforcement Administration (DEA) Southeast Regional Laboratory, where they were examined and their contents identified. The tanks were marked by the chemist and returned to the lab's evidence custodian.

Price was assigned as the case agent to the criminal prosecutions arising from seizure of the tanks. Although the Assistant United States Attorney assigned to those cases advised Price that he did not need the tanks as evidence in the trial, Price insisted that he would bring them in case they were needed. On Thursday, September 8, 1983, Price checked the tanks out of the DEA lab, indicating that they were evidence in a trial. Of the two cases brought as a result of the seizure of the tanks, one defendant pled guilty on September 11, 1983 and the other case was continued indefinitely. Price never returned the tanks to the lab.

On two occasions between September 8, 1983 and his arrest on September 22, 1983, Price delivered portions of hashish oil to Jimmy Carbone, a confidential informant with whom Price had been working. On September 16, 1983, Carbone contacted the FBI in Miami and an investigation of Price began. Between September 17 and September 22, 1983, Carbone made consensual tape recordings of telephone conversations and meetings with Price. These recordings became the primary evidence against Price because Carbone died in December of 1983.

The government contends that the tapes show Price giving Carbone the hashish oil to deliver to Carbone's narcotics connections in North Carolina in exchange for money. It is the government's contention that these were illegal distributions of a controlled substance for profit. The defense contends that Price was conducting a reverse-sting operation, and that Price entrusted a confidential informant with the hashish oil in a good faith attempt to penetrate a narcotics organization.

■ The first issue before this court is whether the appellant's Sixth Amendment right of confrontation and to present a defense was violated when the court allowed the introduction of these taped conversations between Carbone and Price into evidence. The appellant argues that Carbone was a witness in the case because his statements on the tapes were allowed into evidence, and that he is therefore subject to impeachment. The defense argues alternatively that Carbone's statements were adopted by Price, making them adoptive admissions, and thus making Carbone subject to impeachment, citing *United States v. Lemonakis*, 485 F.2d 941 (D.C.Cir.1973) *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974).

In ruling on the defendant's motion in limine to suppress the introduction of the tapes, the trial court ruled that the tapes as they relate to Carbone are not offered to prove the truth of the matter, and are therefore not hearsay. The trial court further ruled that the tapes as they relate to the defendant's statements are admissible under FRE 801(d)(2) admissions of a party.

FRE 806 states in part: "When a hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." Because Carbone's statements were not hearsay, but rather were offered to put into context those statements of Price, Carbone is not subject to impeachment under the first part of that rule. Nor were Carbone's statements admitted against Mr. Price and were not statements by an agent, a person

authorized, or a co-conspirator under FRE 801(d)(2), (C), (D), or (E). Therefore, FRE 806 does not apply to allow impeachment of Carbone.

■ The defense argues that, according to *United States v. Lemonakis,* 485 F.2d 941 (D.C.Cir.1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974), if Price adopted the statements of Carbone such that they are admitted as adoptive admissions, then Carbone may be impeached under FRE 806. In the *Lemonakis* case, a confidential informer similarly died before trial, and the taped recordings between him and the defendants were offered, as here, to put into context the statements of the defendant. The statements were also offered as adoptive admissions by the defendant of the statements made by the confidential informant. As to those statements, the court said: "(t)he only incriminating statements of the informant to be taken as true are those which, in the judgment of the jury, were adopted by appellant, and while that does make the informant's statements hearsay evidence, their adoption by appellant brings them within a long-recognized hearsay exception." *Id.* at 949. Though this case is not controlling, it is persuasive for the proposition that the utterer of words which have been adopted as an admission by the defendant, is subject to impeachment under FRE 806.

In the present case however, the statements of Carbone were not admitted as adoptive admissions of the defendant Price. The single purpose for admitting the Carbone statements was to make understandable to the jury the statements made by Price himself. The statements are not hearsay, as they were not offered for the truth of the matter asserted, and were not what is defined as not hearsay within the meaning of FRE 801(d)(2)(C), (D) or (E). Therefore, the appellant's Sixth Amendment right of confrontation and to present a defense was not violated by the introduction of the tapes into evidence.

■ The second issue raised by the defense is whether the Government failed to disclose evidence concerning Schneider's testimony and thus violated appellant's Fifth Amendment right to due process.

Prior to the present trial, a second investigation of Price was begun regarding a possible subsequent attempted drug transaction with confidential informant Schneider. Separate agents and a separate AUSA conducted the new investigation. In the course of this second investigation, several tapes were made of conversations between Price and Schneider, and between Taylor, who was Price's attorney, and Schneider. This second investigation was concluded before the present trial was begun, and having concluded that there was no evidence of a new crime, the Government turned the tapes over to defense counsel. According to the defense, Schneider was with Price the day before his arrest, and Price had told him of his efforts to buy and sell narcotics and to arrest the buyer in a reverse-sting operation. Therefore, Schneider's testimony would be corroboration for Price's uncorroborated testimony. It is the defense's position that the Government was aware of the value of Schneider's testimony. However, Schwartz, who was the prosecutor in the present case, denied pre-trial that she was privy to the second investigation or had knowledge of the contents of the tape. The Government agreed not to use the tape recordings or direct statements in the case against Price.

The defense's objection is based on a *Brady* violation. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). According to *Brady,* "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where evidence is material either to guilt or punishment." *Id.* at 83, 83 S.Ct. at 1194. The defense argues that Schneider's testimony would be valuable to Price's case in that it would corroborate Price's testimony. Defense further argues that· defense did not have independent knowledge of the significance of Eugene

Schneider, and that upon assurances by the Government that the tapes contained nothing material to the case, defense failed to have the tapes enhanced so that they could be understood.

In the case of *United States v. McMahon*, 715 F.2d 498 (11th Cir.1983), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 507, 78 L.Ed.2d 697, it was held that a *Brady* violation has not occurred if the defendant has equal access to the questioned material. In the present case, Price was a party to the conversations with Schneider. He knew what his case was, and knew the value of these conversations to the corroboration of his testimony. Further, he and his attorney were aware of the existence of the tapes. The tapes themselves were turned over to the defense prior to trial.

■ Defense also argues that a *Massiah* violation has occurred. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). In that case, the court held that the petitioner's Sixth Amendment rights were violated because federal agents deliberately elicited incriminating words from the defendant, without his knowledge, while he was free on bail. Defense argues that Price's Sixth Amendment rights were violated when the second investigation was undertaken, and the tapes made, without Price's knowledge and without counsel being present. However, in *Massiah*, the court held that defendant's statements, obtained under these circumstances, could not be used against him at trial. *Id.* at 207, 84 S.Ct. at 1203. In the present case, Price's conversations with Schneider were not used against him at trial. In fact, the Government specifically agreed that neither the tape recordings nor direct statements would be used against Price.

For the aforestated reasons, this court holds that there has been neither a Fifth nor a Sixth Amendment violation. Therefore, the decision of the district court is affirmed.

AFFIRMED.