832 P.2d 324

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Thanh Van NGUYEN, Defendant–Appellant.**

**No. 18522.**

Court of Appeals of Idaho.

March 31, 1992.

Petition for Review Denied July 8, 1992.

Manweiler, Bevis & Cameron, Boise, for defendant-appellant. David D. Manweiler argued.

Larry EchoHawk, Atty. Gen., and Michael A. Henderson, Deputy Atty. Gen., argued, for plaintiff-respondent.

SWANSTROM, Judge.

Thanh Van Nguyen and two other men were charged with robbery of the Bien Hoa Vietnamese Market in Boise. The co-defendants pled guilty. The charge against Thanh Van Nguyen was amended to allege that he had aided and abetted his former co-defendants in the commission of the crime. I.C. §§ 18–6501, 18–204. A jury found him guilty of the robbery and he has appealed from the judgment of conviction. We affirm.

The jury heard evidence which included Thanh's confession and the taped statements of his co-defendants who did not testify at Thanh's trial. Thanh contends that the district court erred in denying his motion to suppress his confession. He also contends that the court erred by allowing the state to use evidence of the entire statements of his co-defendants which were made during a "joint interview" between police officers and the defendants, evidence of improper touching by Thanh of one of the victims and evidence relating to Thanh's disposition of his part of the proceeds from the robbery.

The state's evidence at trial shows the following facts pertinent to this appeal. On June 17, 1989, three Vietnamese men came into a billiard room next to the kitchen at the Bien Hoa Market. From the kitchen, they were seen briefly, appearing to start a game of billiards. Suddenly, the three men went into the kitchen. Two of them were wearing ski masks and carrying pistols. The third one, who was later identified as Thanh, was not armed nor wearing a mask. Three women and a child were in the kitchen. The two masked men brandished their weapons and demanded that the women hand over the store's cash and all of their jewelry. Thanh went to a back door and unbarred it. He took the cash and jewelry from the women. He then removed a roll of duct tape from his pocket and bound the women's hands. The victims were ordered into a rest room and were told not to come out for ten minutes.

Further information gathered in the investigation of the robbery led Boise detectives to Westminster, California, where police there assisted by contacting three local Asian men, including Thanh, who were suspects in the Boise robbery.

Thanh went to the Westminster police station in response to a call from Westminster Detective, Mark Frank, about a "minor local matter." After a brief conversation with Detective Frank, Thanh was approached by Boise Detectives Smith and Anderson who told him they wanted to talk to him about the Boise robbery, and he agreed to talk with them. Detective Frank

presented Thanh with a waiver of rights form, which Thanh signed before being interviewed by Detective Anderson. He also signed a consent to the search of his apartment. The Boise and Westminster detectives gained additional information about the robbery and the other two suspects were brought to the police station for questioning. Each was questioned and held separately from the others. According to testimony of the detectives, one of the other suspects agreed to talk to the police about the robbery if he could do so in the presence of the other two. Later that evening, Detective Frank asked Thanh, who had been placed in a holding cell at the Westminster police station, if he would give a further statement about his role in the Boise robbery in the presence of the two other suspects. Thanh consented and participated in a tape-recorded interview, where his co-defendants also gave statements, after each had executed a separate waiver of rights form. Thanh's confession and the inculpatory information derived from the tape-recorded statements of Thanh and his two co-defendants, Trung and Hien, were eventually admitted at Thanh's trial, which resulted in a guilty verdict and a judgment of conviction.

### Validity of Waiver of Fifth Amendment Privilege

Thanh contends that the district court erred in denying his motion to suppress the in-custody statements he made without the aid of an interpreter and, therefore, without comprehending the waiver of his constitutional rights to remain silent and to avoid self-incrimination. Thanh asserts that his waiver of rights was not knowingly and intelligently given because he was not provided with an interpreter to translate the *Miranda* warnings which were read to him only in English. Thanh, whose native language is Vietnamese, asserted that he can read little in either Vietnamese or English. Consequently, his having been given a printed Vietnamese translation of the *Miranda* warnings did not necessarily overcome the language obstacle to his understanding of his rights. Thanh argues that the waiver is flawed for this reason and,

therefore, his statement subsequent to the waiver cannot be admitted against him. As a second basis to exclude his statements, Thanh asserts that he signed the waiver of rights form because of threats and false promises made by Detective Smith.

Before a statement procured after a defendant has signed a waiver of rights form can be deemed admissible, the state must show a valid waiver. It is clear that the burden rests upon the state to demonstrate the validity of the waiver, that is, that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Culbertson*, 105 Idaho 128, 130, 666 P.2d 1139, 1140 (1983); *State v. Ybarra*, 102 Idaho 573, 634 P.2d 435 (1981). The presumption is against waiver, *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336 (1983), *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983), and even an express written waiver of *Miranda* rights, though strong proof of a voluntary waiver, is not conclusive. *Id.* 104 Idaho at 498, 660 P.2d at 1341, *citing State v. Padilla*, 101 Idaho 713, 719, 620 P.2d 286, 292 (1980). *See also North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). On appeal, we must look to the totality of the circumstances to determine whether the state has met its burden of proof and we freely review whether the court correctly determined that appellant knowingly and voluntarily waived his *Miranda* rights. *State v. Mitchell, supra,* 104 Idaho at 498, 660 P.2d at 1341. We review the court's conclusions that the defendant made a knowing and voluntary waiver to determine whether they are supported by substantial and competent evidence. *State v. Mitchell, supra.* Therefore, we will uphold the court's conclusions unless they are erroneous. *Id.; see also State v. Blevins*, 108 Idaho 239, 243, 697 P.2d 1253, 1257 (1985).

The district court made findings at the conclusion of the hearing on the motion to suppress that Thanh had knowingly waived his rights, that he understood Eng-

lish and had freely made the statements which he later attempted to have suppressed. Thanh contends that because the detectives did not inform him that interpreters were available and because of his limited English language skills, Thanh was precluded from understanding the waiver of his rights. The testimony at the suppression hearing revealed that Thanh signed a first waiver at 6:14 p.m. (exhibit 5) and a second waiver at 9:50 p.m. (exhibit 6) after Detective Anderson read him his rights in English from the advisement of rights form printed in English on one side and in Vietnamese on the reverse. On both occasions, Thanh was then handed the form so that he could read the Vietnamese side, which Detective Anderson believed he did read. Anderson also testified that to each stated right, Thanh had indicated that he understood before signing his name on the Vietnamese side of exhibit 5 and on the English side of exhibit 6.

Presumably, *Miranda* warnings are to be given in a language which the person being so instructed understands, or a waiver of those rights would not be valid. *See United States v. Martinez,* 588 F.2d 1227, 1235 (9th Cir.1978). In this case, the waiver of rights form described above contained a Vietnamese translation of the *Miranda* warnings by a certified interpreter approved by the State of California. Apparently, Thanh was not asked by any of the detectives whether he could read Vietnamese, and the record is unclear as to whether Detective Frank was aware of Thanh's Vietnamese language proficiency. Detective Frank testified that he had independently decided that no interpreter was needed, because in his judgment Thanh had no difficulty communicating in English. Thanh testified that he can read Vietnamese, "but very little." His claim, however, is not that he was unable to read the Vietnamese, but that he could not understand the rights read to him in English.

The district court found that Thanh understood he did not have to speak to the police and that his statements could be used against him. Other than the fact that Thanh had indicated that he was more fluent in Vietnamese than in English, the testimony was that Thanh never requested an interpreter during questioning or said that he did not understand what was said to him. *See United States v. Bernard S.,* 795 F.2d 749 (9th Cir.1986) (seventeen-year old suspect questioned in English, not Apache, claimed to understand his rights explained with the help of his mother and answered questions in English); *see also United States v. Bing-Gong,* 594 F.Supp. 248 (N.D.N.Y.1984), *cert. denied,* 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 33 (1986) (defendant who had difficulty with English disputed that he had been given warnings and claimed not to understand although no interpreter was requested and defendant answered questions in English before the questions were translated). The evidence also showed that Thanh effectively communicated during the tape-recorded interview where English was spoken by the four detectives and the three suspects. *See State v. Ybarra,* 102 Idaho 573, 634 P.2d 435 (1981). Further, the fact that Thanh was assisted by an interpreter at all proceedings in his case, to facilitate the trial, is not conclusive of whether his waiver was intelligently given. We hold that the district court's finding that Thanh sufficiently understood his rights was not erroneous.

### Voluntariness of Statements

■ Thanh's second contention, that his statements were involuntary, was also rejected by the district court. The circumstances at the Westminster police station have already been recounted. It is not disputed that Thanh was held in a cell between the time he first spoke with Detective Anderson and the time of the taped interview, wherein he made additional incriminating statements. Thanh contends that he waived his rights in the face of intimidation and psychological pressure. He testified that Detective Smith threatened that he could hire someone to beat Thanh up and also promised that he could talk to the judge in Boise. Smith denied this conduct and also denied ever being alone in an interview room with Thanh.

The question of voluntariness of a defendant's statements is a matter of law to be

decided by the trial court for purposes of admission. *State v. Mitchell, supra,* 104 Idaho at 499, 660 P.2d at 1342. The district court at the suppression hearing was not convinced by Thanh's story of police coercion and found that Thanh's waiver and subsequent confession were freely given. Considering the preponderance of the evidence standard that must be met to prove voluntariness, *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972), we conclude in our review that the court's finding on this point was not erroneous. We affirm the district court's decision not to suppress Thanh's statements which were made after a valid waiver of his rights.

### The Co-defendants' Statements

■ Thanh contends that the district court erred in admitting the entire taped interview containing statements of Thanh and his two co-defendants. Two days into the trial, the court revised its ruling on the defense's motion in limine and allowed the entire tape-recorded statements of the co-defendants to be admitted as Thanh's "adoptive admissions." Originally, the court had limited the admission of the tape to Trung's statement regarding Thanh's taping the hands of the victims during the robbery. By this revised ruling, Thanh argues that he was deprived of his right to confront witnesses against him, and he argues for a reversal of his conviction.

The state argued for the admissibility of Trung's statement as an adoptive admission by Thanh based on the testimony of Detective Anderson that, while Trung was making this statement, Thanh was nodding his head in agreement. Thanh's objection at trial was not to Trung's single statement, but to the admission of the co-defendants' statements upon receipt of new evidence from Detective Anderson that Thanh had continued to nod his head affirmatively throughout their thirty to forty minute interview. Citing *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), *cert. denied,* 397 U.S. 1014, 90 S.Ct. 1248, 25 L.Ed.2d 428 (1970), Thanh alleges that his right of confrontation under the Sixth Amendment was violated when these statements of non-testifying co-defendants were admitted in evidence against him.

*Bruton* protects a defendant from the incriminating out-of-court statements of a co-defendant being used against him in a joint trial where the co-defendant does not take the stand. As explained by the *Bruton* court,

> [n]ot only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame to others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination. It was against such threats to a fair trial that the Confrontation Clause was directed. [Footnotes omitted.]

391 U.S. at 136, 88 S.Ct. at 1628. Thanh's trial did not proceed as a joint trial, his co-defendants having negotiated a plea. Not until the state tried to introduce the entire tape was Thanh's counsel faced with addressing the prejudice that would result from the admission of the co-defendants' statements, particularly that portion of the statements describing Trung's and Hien's conduct in the robbery. In opposing the admission of the entire tape, Thanh's counsel also argued that the jury would have a problem distinguishing which statements Thanh had nodded his head to and which statements applied to him and which did not. Thanh contended that to admit all of the tape would confuse and mislead the jury resulting in prejudice which would far outweigh the probative value of the statements.

The district court ruled in favor of the state in allowing the entire tape to be admitted as an exhibit and played to the jury after Detective Anderson testified that, throughout the statements of the co-defendants, Thanh had nodded his head, thereby adopting the statements as his own. The court so ruled in spite of finding that the tape was hard to understand and too difficult to be transcribed by a stenographer.

The trial judge also interposed that he had listened to the tape, but he would have no way to "see" Thanh nodding as the detective had testified.

The party contending for adoption has the burden of proving adoption was intended. *See* G.M. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER 264 (3d ed. 1987).

> When a statement is offered as an adoptive admission, the primary inquiry is whether the statement was such that under the circumstances, an innocent defendant would normally be induced to respond, and whether there are sufficient foundational facts from which the jury could infer that the defendant heard, understood, and acquiesced in the statement. [Citations omitted.]

*United States v. Carter*, 760 F.2d 1568, 1579 (11th Cir.1985). In the facts described herein, Thanh was present during the interview of the co-defendants and is said to have nodded his agreement to their statements. From that evidence, the court concluded that the hearsay statements of the co-defendants were adopted by Thanh thus becoming his own admissions.

■ As to those extra-judicial statements by the co-defendants offered as adoptive admissions of Thanh, "their adoption by appellant brings them within a long-recognized hearsay exception." *United States v. Price*, 792 F.2d 994, 997 (11th Cir.1986), *citing United States v. Lemonakis*, 485 F.2d 941, 949 (D.C.Cir.1973), *cert. denied*, 415 U.S. 989, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). The applicable Idaho Rule of Evidence is identical to Federal Rule of Evidence 801(d)(2)(B). The Idaho rule provides that a statement which is offered against a party at trial and "of which he [the party] has manifested his adoption or belief in its truth" is not hearsay. Rather, it is deemed an admission of the party opponent. I.R.E. 801(d)(2)(B). Correspondingly, the reliability of the declarant is no longer subject to scrutiny and the defendant's right of confrontation is not an issue.

After the tape was played for the jury, Detective Anderson testified to clarify which statements Thanh had made. Thanh made several incriminating statements during the interview, describing generally what the three defendants did and also admitting to specific things he had done. It was not error for the court to allow the jury to hear the tape of these statements just as they were spoken by Thanh at the time of his arrest. These statements were highly probative on an issue Thanh had raised early in the trial, that is, whether he willingly participated in the robbery or was coerced and frightened into doing so.

However, we cannot say that it was proper for the court to allow the entire tape into evidence as the "adoptive admission" of Thanh. A reliable foundation for such a ruling was not present in this case. The joint statement takes the form of two or three of the co-defendants speaking at once where one's narration overlays the comments or statements of the other. The identity of the speaker is not always clear. Further, any attempt to determine which statements Thanh purportedly was agreeing with by his nodding would be impossible. We conclude that permitting the jury to hear the entirety of the tape-recorded statements of the co-defendants as an adoptive admission by Thanh was error.

### Was the Error Harmless?

■ We must next decide if the prejudice occasioned by the error warrants reversal. "The core inquiry ... is whether it appears from the record that the ... [error] contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the error not occurred." *State v. Palin*, 106 Idaho 70, 75, 675 P.2d 49, 54 (Ct.App.1983). At trial, after the state made its opening statement to the jury outlining the evidence the state expected to produce, Thanh's counsel spoke to the jury. He told the jury that Thanh agreed with many of facts the state said it would prove. Particularly, he agreed that Thanh was in the Bien Hoa Market on June 17, 1989, with Thung and Hien, and that he did take jewelry and money from the victims and used duct tape to bind them during the

robbery. The jury was told that Thanh would testify that he came to Boise with Thung and Hien on vacation and that he had no idea they planned to rob the market until Thung and Hien produced masks and guns and went into the kitchen; that he heard a scream from the kitchen and one of his co-defendants yelled for Thanh to come in; that he was then ordered to help them gather the jewelry and money and bind the women; and that he cooperated out of fear.

The victims testified, identifying Thanh as the one who did not wear a mask during the robbery or display any weapon and as the one who bound them up with duct tape after taking their jewelry. They testified that all three men came into the kitchen together and that Thanh went immediately to the back door to unbar it. The state introduced a fingerprint, matching Thanh's, which a detective found on the back door. Two of the victims testified that Thanh removed the duct tape from his pocket while he was in the kitchen. One said that she had seen Thanh at the market earlier that day. The state produced undisputed evidence that Thanh, in the company of one of co-defendants, purchased the duct tape at a nearby convenience store shortly before the robbery.

Thanh testified as expected. He said he had participated under duress, and that because he was afraid of Trung he complied. Thanh, however, denied that he had taken charge of opening the back door for the getaway or that it was his preassigned job to get the jewelry and subdue the victims by tying them up and closing them in the rest room. He explained that he and Hien bought the duct tape because Hien told him that he needed it for repairing his car. He also admitted—as he had earlier when confronted by the detectives in California—that he had kept a small jade buddha from the robbery.

Thanh has not shown how any specific statement made by either of his co-defendants in the taped "joint" interview prejudiced his defense. Neither co-defendant attempted to shift blame onto Thanh. The evidence that undermined Thanh's version of the robbery came not from the co-defendants' statements contained in the recording of the joint interview, but rather from the testimony of the victims and from other witnesses. Accordingly, we are convinced that any error from the admission of the entire tape did not contribute to the jury's verdict of guilty and was harmless.

### Admission of an Uncharged Bad Act

Thanh next claims error in the district court's admission of testimony from one of the victims that after she had removed her jewelry, "[Thanh] searched me on my breast and asked me if I hide anything in there." Thanh had urged the court previously not to admit this evidence because it was not relevant to prove any of the elements of the robbery charge and because of its inflammatory nature.

The rules of evidence generally preclude the admission of other crimes or bad acts as evidence to prove that a defendant is guilty of the crime for which he is on trial. The rule guards against creating a bias or prejudice in the minds of the jury. *See generally State v. Stoddard,* 105 Idaho 533, 670 P.2d 1318 (Ct.App.1983). If, however, the evidence is relevant to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, it may be admissible. I.R.E. 404(b). Finally, the court's resolution of the balancing of probative value against prejudicial effect of this evidence will not be overturned on appeal absent a clear abuse of discretion. *State v. Stoddard, supra; State v. Roach,* 109 Idaho 973, 712 P.2d 674 (Ct.App.1985).

The state offered the evidence of Thanh's improper touching of the victim to rebut the defense that Thanh had participated unwillingly in the robbery under the direction of his co-defendants. The improper touching evidence can be said to go to the intent with which the robbery was done as explained in a description found in an instruction given by the trial court in *Stoddard:*

> The intent with which an act is done is manifested by the circumstances attending the act, the manner in which it is done, the means used, and the sound

mind and discretion of the person committing the act.

*Id.*, 105 Idaho at 537, 670 P.2d at 1322. Here, the district court declared that the improper touching evidence was part and parcel of the robbery. In similar situations, our Supreme Court has ruled that a jury is entitled to base its decision upon a full and complete description of the events surrounding the commission of a crime. *State v. Windsor*, 110 Idaho 410, 416, 716 P.2d 1182, 1188 (1985), *cert. denied*, 479 U.S. 964, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986), *citing State v. Izatt*, 96 Idaho 667, 670, 534 P.2d 1107, 1110 (1975). We find no error in the district court's decision to admit evidence of the improper touching.

#### Admission of Defendant's Post–Robbery Activities

Thanh's last claim is that the district court erred in admitting statements recounting his activities subsequent to the robbery. The offensive evidence included information that Thanh and the others headed back to California in the early morning hours and played slot machines en route in Nevada with the profits from the robbery. Thanh's testimony, however, was not that he got a share of the profits, but that he was given some money to keep his mouth shut. He admitted to spending some of this money on the return trip to California.

As noted earlier, the admission of evidence is governed by an abuse of discretion standard. The post-crime activities were not criminal in and of themselves, but they were relevant to the state's contention that Thanh acted in consort with the co-defendants, was friendly with them and shared in the profits. The court could reasonably have viewed this evidence as probative, and we find no error in its decision.

In summary, we uphold the ruling of the district court that Thanh's statements to the police were voluntary and therefore admissible. We find no error in the evidentiary rulings admitting the improper touching evidence and evidence of Thanh's acts subsequent to the crime. Any error occurring in the admission of the entire tape recording was harmless error. Because we

are not persuaded that any reversible error occurred at trial, we affirm the judgment of conviction.

WALTERS, C.J., and SILAK, J., concur.