JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Benjamin Sloan ("defendant") appeals from the judgment of the trial court which, after a jury trial, found him guilty of nine drug-related offenses. Defendant was sentenced to a total of six years incarceration. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On October 24, 2001, defendant was charged with a nine-count indictment including: three counts of trafficking in cocaine in violation of R.C. 2925.03, one with a schoolyard specification; three counts of preparation of drugs for sale in violation of R.C. 2925.07, one with a schoolyard specification; and three counts possession of drugs in violation of R.C. 2925.11. Defendant pleaded not guilty and the matter proceeded to a jury trial on April 20, 2001.
 {¶ 3} The state presented testimony of Detective Hirko of the Cuyahoga County Sheriff's Office, Division of Narcotics. As a narcotics detective, he regularly conducts controlled purchases of illegal narcotics. He testified that it is common practice to use Confidential Reliable Informants (CRI's) to successfully execute these purchases. Detective Hirko summarized the events which led to the defendant's arrest. He stated that he worked with the CRI on three different occasions to obtain crack cocaine from the defendant.
 {¶ 4} On June 6, 2000, the CRI placed a call to the defendant's pager. When the defendant returned the page, Detective Hirko and Detective Rutkowski listened in on the conversation as the defendant and the CRI made arrangements to meet. Immediately following the conversation, the detectives wired the CRI with a transmitter and a recorder, handed him recorded buy money, inconspicuously followed him to the buy area, watched him park and stationed themselves approximately fifty feet away. Detective Hirko testified that he observed the defendant exit his vehicle, go into his trunk to retrieve something, and reenter his vehicle. The detective was able to see the license plates, called them in, and discovered the vehicle belonged to the defendant.
 {¶ 5} The detectives watched as the CRI entered the defendant's vehicle and exchanged $900 for crack cocaine. They were also listening to the transaction take place via the surveillance taping equipment. The detectives were able to hear a brief conversation about drugs and the counting of money. The tape revealed that the defendant was instructing the CRI on how to cut up the crack to make the most of his money at resale. Following the exchange of drugs for money, the CRI exited the defendant's vehicle, returned to his own and proceeded to meet the detectives at a prearranged location. There, the CRI handed the drugs to Detective Hirko and the equipment was removed from his person. The CRI turned over one ounce of cocaine to the detectives, for which he had paid the $900 to the defendant. Detective Hirko testified that this was considered the "low level" value of one ounce of cocaine and indicating that the ounce was intended for resale, from which a person can double or triple their money. The detective testified that they did not immediately arrest the defendant in order to protect the CRI.
 {¶ 6} On June 8th, the detectives employed the same procedure to execute the second controlled buy. The CRI placed a page to the defendant, who returned the call. The detectives listened again to the CRI and defendant make arrangements, noting that the voice of the defendant was the same as on the first tape. After the CRI and defendant determined a location, the detectives searched the CRI for any contraband, searched his vehicle, wired him with the transmitter, gave him $900 of marked money and followed him to the area. When they arrived at the area, they were approximately 30 feet away and were able to see that the defendant was driving the same vehicle as in the first transaction. The detectives were also able to listen to the transaction as it was taking place. The detectives listened as the CRI and defendant had a casual conversation as they exchanged the money for drugs. The CRI eventually returned to his vehicle and met the detectives at the prearranged meeting area where he turned over 10 grams of crack cocaine to the detectives. The detective testified that the crack cocaine recovered was packaged in quarters for resale purposes. Furthermore, Detective Hirko testified that the defendant was aware that the CRI had planned to resell the crack cocaine, as evidenced by the conversation that took place during the controlled purchase. The defendant had explained to the CRI during the transaction how he could double his money when reselling the crack cocaine.
 {¶ 7} Detective Hirko testified that on June 21, they conducted the last controlled purchase involving the defendant and this CRI. Again, they paged the defendant, who responded to the call and made arrangements with the CRI. They searched the CRI for any contraband, wired him and followed him to the target location. The defendant pulled up to the CRI, who then entered the defendant's vehicle. They engaged in conversation while riding around the block and exchanged $900 for crack cocaine. Detective Hirko testified that the defendant was driving a different car, but they were unable to see the license plates to determine whether the car was registered to the defendant. They were, however, able to listen to the conversation through the surveillance equipment, and were able to identify the voice of the defendant. The defendant and the CRI once again discussed how the CRI could double his money when reselling the drugs. Thereafter, the defendant dropped the CRI off at his car and the detectives followed the CRI to a predetermined location. They retrieved the drugs from the CRI.
 {¶ 8} Detective Rutkowski testified that the three packages of crack cocaine purchased from the defendant were each of sufficient quantity to support redistribution. Rutkowski also testified to the presence of a school within about one thousand feet of where the drug transaction took place, based on what he observed. He also testified in regard to the school location based on a certified plat map that came from the Cuyahoga County Auditor's Office.
 {¶ 9} During the trial, the state presented the tapes from the three separate drug transactions as evidence. Because the tapes were at times inaudible, Detective Hirko was asked to explain what was taking place on the tapes as they were being played in open court. The tapes were not played in their entirety, rather they were turned off at the end of each drug transaction. At the end of these transactions, however, the CRI had been taped describing the details of each transaction. Over defense objection, all three tapes of the drug transactions and the plat map were admitted into evidence.
 {¶ 10} The jury returned guilty verdicts on all counts and found all specifications and alleged drug quantities as charged in the indictment. The defendant was subsequently sentenced to six years on count one, a first degree felony. He received lesser sentences on the other counts, all of which ran concurrently with the six-year sentence on the first count. It is from this ruling that the defendant now appeals, asserting seven assignments of error for our review.
 I. {¶ 11} INTRODUCTION OF EXHIBITS FIVE, SIX AND SEVEN, IN THEIR ENTIRETY VIOLATED THE PROHIBITION AGAINST THE ADMISSION OF HEARSAY EVIDENCE AND DENIED MR. SLOAN HIS CONSTITUTIONAL RIGHTS TO CONFRONTATION.
 II.
{¶ 12} THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT PERMITTED DETECTIVE HIRKO TO OFFER HIS CHARACTERIZATION OF WHAT WAS TAKING PLACE ON TAPE.
 III. {¶ 13} ADMISSION OF EXHIBIT FIVE CONSTITUTED ADMISSION OF OTHER ACTS EVIDENCE IN VIOLATION OF R.C. 2945.59, EVID.R. 404 (B) AND MR. SLOAN'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 {¶ 14} We address together the defendant's first three assignments of error, as they all relate to the introduction of certain testimony and other evidence.
 {¶ 15} Defendant contends that it was error for the trial court to permit the introduction of the tape recordings of the drug transactions in their entirety and to allow Detective Hirko to explain the portions of the tape that were inaudible.
 {¶ 16} We note at the outset that the tape recordings of the actual drug transactions are not hearsay. Federal courts have uniformly held that introducing such tapes does not violate the Confrontation Clause or any evidence rules governing hearsay. Such statements are merely necessary to establish the context of the defendant's statements and responses, and therefore not offered to prove the truth of the matter asserted. United States v. Price (11th Cir. 1986), 792 F.2d 994, 996;United States v. Lemonakis (D.C. Cir. 1973), 485 F.2d 941, 948, cert. denied (1974), 415 U.S. 989; State v. Hill (Dec. 31, 1990), Fifth Dist. No. CA-8094. However, following the tape recordings of the actual transaction, the CRI detailed these transactions that had immediately taken place and allegedly stated that he had done "business" with the defendant in the past. These portions of the tapes constitute hearsay, as they are out-of-court statements offered for the truth of the matter asserted.
 {¶ 17} The defendant did not object to the admission of the tape recordings in their entirety at trial, nor did he object to Detective Hirko's testimony. Therefore, he has waived all but plain error. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court."State v. Childs (1968), 14 Ohio St.2d 56, 236 N.E.2d 545, paragraph three of the syllabus. Pursuant to Crim.R. 52 (B), plain errors or defects which affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court. Notice of plain error, however, applies only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. State v.Maryland (1990), 50 Ohio St.3d 58, 62, 558 N.E.2d 894, State v.Phillips, 74 Ohio St.3d 72, 83, 1995-Ohio-171, 656 N.E.2d 643.
 {¶ 18} In the instant case, it cannot be said that the outcome of the trial would have clearly been otherwise had the tapes not been admitted in their entirety. There existed sufficient other evidence for the jury to find the defendant guilty on all counts. This evidence included the tape recordings of the actual drug transactions, the testimony of both detectives who witnessed the drug transactions and the recovered drugs. Detective Hirko testified that he and Detective Rutkowski witnessed the drug transactions while undercover. He gave detailed testimony as to what transpired, including identifying the defendant. Additionally, the crack cocaine retrieved by the CRI was submitted into evidence. Furthermore, while the tapes were inaudible at times, significant portions are sufficiently audible to conclude that the defendant conducted the drug transactions in question. Therefore, we cannot say that, had the portions of the tape and Detective Hirko's testimony with regard to the tapes been excluded, the outcome of the trial would have been clearly otherwise. We therefore overrule these assignments of error.
 IV. {¶ 19} THE TRIAL COURT VIOLATED MR. SLOAN'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO TRIAL BY JURY AND DUE PROCESS WHEN IT DIRECTED THE JURY TO FIND THAT THERE WAS THE ALLEGED AMOUNT OF CRACK COCAINE PRESENT.
 {¶ 20} The defendant contends that the trial court erred when it informed the jury of the stipulation as to the amounts of crack cocaine involved in each transaction. We disagree.
 {¶ 21} Absent a stipulation of fact, the jury is the sole arbiter of the facts, the credibility of witnesses and the weight of the evidence. R.C. 2945.11; State v. Hernandez (Feb. 24, 2000), 8th Dist. No. 74757; see 4 Ohio Jury Instructions (1997) 405.20 Section 1. In this case, there was a stipulation of fact as to the amount of crack cocaine. Therefore, the trial court did not err in its instruction to the jury on this issue.
 V. {¶ 22} THE CONVICTIONS FOR DRUG TRAFFICKING, PREPARATION FOR SALE AND DRUG POSSESSION AS THEY APPLY TO EACH OF THE THREE DATES OF CONVICTION, ARE ALLIED OFFENSES.
 {¶ 23} The defendant contends that he can only be convicted on one offense pertaining to each of the three dates alleged in the indictment. Specifically, he avers that both the preparation of drugs for sale and trafficking in drugs are allied to the possession of the same drugs. We disagree.
 {¶ 24} R.C. 2941.25(A) provides that a defendant may be convicted of only one offense when his conduct constitutes two or more allied offenses of similar import. However, where a defendant's conduct constitutes two or more offenses of dissimilar import, or results in two or more offenses of the same or similar kind committed with a separate animus as to each, the defendant may be convicted of all of them. R.C.2941.25(B).
 {¶ 25} The Ohio Supreme Court has set out a two-step test to determine when convictions may be obtained for two or more allied offenses of similar import. In the first step, the elements of the offenses at issue are compared in the abstract to determine whether the elements correspond to such a degree that the commission of one offense will result in the commission of the other. State v. Rance
(1999), 85 Ohio St.3d 632, 638, 710 N.E.2d 699. But if a defendant commits offenses of similar import separately or with a separate animus, he may be punished for both pursuant to R.C. 2941.25(B). Id., State v. Jones (1997), 78 Ohio St.3d 12, 13-14.
 {¶ 26} Under R.C. 2925.03(A), No person shall sell or offer to sell a controlled substance. According to R.C. 2925.07(A), as it existed at the time of the offense[1],
 {¶ 27} No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance when the person intends to sell or resell the controlled substance or when the person knows or has reasonable cause to believe that another person intends to sell or resell the controlled substance.
 {¶ 28} It cannot be said that the elements correspond to such a degree that the commission of one offense will result in the commission of the other. Preparation of drugs for distribution does not necessarily result in the sale of the drugs. One may be involved in the preparation of drugs knowing that the illegal narcotics will be resold, without ever selling them on the streets himself. That is, preparation can be completed by one person and the sale of those prepared drugs by another. We cannot find that these offenses are allied and therefore overrule this assignment of error.
 VI. {¶ 29} THE TRIAL COURT ERRED WHEN IT ADMITTED UNAUTHENTICATED HEARSAY EVIDENCE IN THE NATURE OF THE POLICE TESTIMONY REGARDING THE VEHICLE REGISTRATION OF A CAR PURPORTEDLY BELONGING TO MR. SLOAN AND THE TESTIMONY REGARDING THE PLAT MAP PURPORTEDLY EMANATING FROM THE AUDITOR'S OFFICE.
 {¶ 30} The admission of evidence rests within the trial court's discretion. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271,569 N.E.2d 1056. Therefore, our review is limited to determining whether the trial court abused its discretion in allowing testimony by Detective Hirko regarding the license plate check of the defendant's car and regarding the certified plat map from the auditor's office.
 {¶ 31} "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. An abuse of discretion implies that the court's ruling was unreasonable, arbitrary or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151, 404 N.E.2d 144. To find an abuse of discretion, this court must find that the trial court committed more than an error of judgment. State v. Reed (1996),110 Ohio App.3d 749, 752, 675 N.E.2d 77 citing to State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343.
 {¶ 32} In the instant case, the trial court did not abuse its discretion in allowing testimony with regard to the defendant's license registration or the certified plat map that was submitted from the Cuyahoga County Auditor's Office. Detective Hirko's testimony in this regard was not hearsay; he had personal knowledge of the results of the record check. In regard to the certified map, the defendant avers that it is inadmissible hearsay. We disagree. Pursuant to Evid.R. 803 (8), the certified copy of the plat map is a public record that falls with the exception to hearsay. The court did not abuse its discretion in noting that the map was a regularly kept public document. Furthermore, pursuant to Evid.R. 902, the certified copy of the map is self-authenticating. Therefore, this assignment of error is not well-taken.
 VII. {¶ 33} THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10
OF THE OHIO CONSTITUTION.
 {¶ 34} The defendant contends that he was denied effective assistance of counsel as a result of various errors by his trial counsel. Specifically, the defendant avers trial counsel failed to object to the admission of certain evidence and testimony by Detective Hirko, and jury instructions.
 {¶ 35} In establishing a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:
 {¶ 36} First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant o a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable.
{¶ 37} Strickland v. Washington (1986), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674. Accord State v. Bradley (1989), 42 Ohio St.3d 136,538 N.E.2d 373, paragraph two of the syllabus. The Strickland Court also cautioned courts examining the issue that:
 {¶ 38} Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133 134, 102 S.Ct. 1558, 71 L.Ed.2d 783. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
{¶ 39} 466 U.S. at 689. See, also, State v. Frazier (1991),61 Ohio St.3d 247, 253, 574 N.E.2d 483. In addition, absent demonstration of prejudice, this court must indulge in a strong presumption that the failure to object at trial constitutes sound strategy: Strickland supra;State v. Moore (1994), 97 Ohio App.3d 137, 646 N.E.2d 470. See, also,State v. Catlin (1990), 56 Ohio App.3d 75, 564 N.E.2d 750.
 {¶ 40} We have already determined that the admission of certain evidence and testimony did not rise to the level of plain error, in that the outcome of the trial would not have clearly been different. The defendant has therefore failed to demonstrate that the outcome of this trial was unreliable due to trial counsel's alleged deficiencies. Therefore, this assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA ANN BLACKMON, P.J., CONCURS. COLLEEN CONWAY COONEY, J., CONCURSIN JUDGMENT ONLY.
[1] R.C. 2925.07 was repealed in February 2001 and the provision as to the elements of the offense were relocated at R.C. 2925.03 (A)(2), but were otherwise unchanged.