[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10611
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20351-DLG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PIKERSON MENTOR,
a.k.a. "Diddy,"

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 1, 2014)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Pikerson Mentor appeals his convictions, following a jury trial, for conspiracy to affect commerce by robbery; affecting commerce by robbery; carjacking resulting in death; murder of a federal postal worker; possession of a firearm in furtherance of a crime of violence; possession of a firearm in furtherance of a crime of violence resulting in death; wrongful possession of a stolen U.S. postal key; possession of ammunition by a convicted felon; conspiracy to commit access device fraud; access device fraud; and four counts of aggravated identity theft.  Mentor presents three arguments on appeal.  First, he argues that the district court erred in denying his motion for a new trial based on the government's violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).  Second, he argues that the district court erred in admitting a letter he dictated to his ex-girlfriend.  Lastly, he argues that his robbery/homicide counts were improperly joined with his fraud counts.  After careful review of the parties' arguments, we affirm.

## I.

We begin with Mentor's argument that the district court erred in denying his motion for a new trial based on a Brady violation, which is reviewed for an abuse of discretion.  United States v. Naranjo, 634 F.3d 1198, 1206 (11th Cir. 2011).  To state a Brady violation, Mentor must show that:  (1) the prosecution possessed evidence favorable to him; (2) he did not possess the evidence, nor could he have

obtained it with reasonable diligence; (3) the government suppressed the evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceedings would have been different. United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001) (per curiam).  If Mentor knew of the information or had equal access to it, then there is no suppression issue. United States v. Price, 792 F.2d 994, 998 (11th Cir. 1986).  In considering whether the government's nondisclosure of exculpatory information violated Mentor's due process rights, "the focus is not upon the fact of nondisclosure, but upon the impact of the nondisclosure on the jury's verdict." United States v. Kopituk, 690 F.2d 1289, 1339 (11th Cir. 1982).  "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109–10, 96 S. Ct. 2392, 2400 (1976).

Mentor's Brady argument focuses on a husband and wife, the McCulloughs. The McCulloughs witnessed and heard key events on December 6, 2010, the day the postal worker was murdered.  In April 2011 the police came to their house, and Mrs. McCullough identified Mentor from a picture line-up as the man she saw driving the stolen mail truck after the murder.

The government failed to disclose until after trial that the McCulloughs had inquired about a $100,000 reward offered by the U.S. Postal Service for

information leading to the arrest and prosecution of those responsible for shooting the postal worker.  Mr. McCullough asked the prosecutor about the award in the summer of 2011 and asked the U.S. Postal Inspector about the award in July or August 2012.  The one-week trial concluded on September 13, 2012.  Mrs. McCullough inquired about the reward on September 27, 2012, and the McCulloughs were provided with applications for the reward to be submitted to the U.S. Postal Inspection Service.  Mentor argues that the failure to disclose this information prejudiced his ability to cross-examine the McCulloughs regarding possible motivations for their testimony.

The district court correctly determined that Mentor failed to demonstrate a reasonable probability existed that the outcome of the proceedings would have been different had evidence about the inquiries regarding the reward been disclosed.  The government's failure to disclose that Mr. McCullough inquired before trial whether he qualified for the reward does not "undermine confidence in the outcome."  See United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383 (1985).  First, nothing indicates that the McCulloughs changed their testimony based on the possibility that they would receive the reward for testifying. Their trial testimony regarding what they saw the day the postal worker was killed was substantially the same as the information they provided to a 911 operator on the date of the murder.  Also, no evidence indicated that Mrs. McCullough picked

4

Mentor's photograph out of the line-up because of any reward.  Mr. McCullough

did not even inquire about the reward until after Mrs. McCullough identified

Mentor as the person she saw driving the mail truck.

Second, other evidence independently established that Mentor was present at

the scene at the time of the homicide, including:  (1) codefendant Saubnet Dwayne

Politesse's testimony that Mentor shot the postal worker; (2) Mentor's attempts to

fabricate evidence and create a false alibi; (3) cell tower records that showed

Mentor's and Politesse's cell phones being used near the scene of the murder at the

time it occurred[1]; and (4) testimony that, at the time of the crime, Mentor was

driving the vehicle that was seen on video following the mail truck before the

crime.  In light of this, Mentor cannot demonstrate that the result of the

proceedings would have been different but for the government's failure to disclose

that the McCulloughs inquired about a reward.  See Hansen, 262 F.3d at 1234.

Therefore, the district court did not abuse its discretion in denying Mentor's

motion for a new trial for a Brady violation.

## II.

We next address Mentor's argument that a letter he dictated to his ex-

girlfriend was improperly admitted into evidence because it lacked sufficient

authentication, constituted hearsay, and was highly prejudicial.  The district court

---

[1] A police detective testified at trial that the records were obtained "through the legal process."

5

conducted a hearing about the letter after jury selection.  Mentor's former girlfriend, Judith Dormevil, testified that the letter she received was from Mentor because he was the only person who would be sending her a letter, and based on her reading of it she knew it was from him.  She could not think of anyone other than Mentor that the letter could have come from because of the references to her, her brother, her best friend, and other key details.  A different woman who had dated Mentor testified that Mentor told her that he had sent the letter to Dormevil.  Ultimately the district court found that the letter to Dormevil was properly authenticated.

We generally review a district court's evidentiary rulings for a clear abuse of discretion and "will reverse only if the resulting error affected the defendant's substantial rights."  United States v. Tinoco, 304 F.3d 1088, 1119 (11th Cir. 2002) (quotation marks omitted).  However, where a defendant fails to preserve an evidentiary ruling through contemporaneous objection, we review for plain error.  United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007).  To prevail under plain error review, a challenging party must show "(1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Patterson, 595 F.3d 1324, 1326 (11th Cir. 2010).

Several evidentiary principles apply here.  First, documents must be properly authenticated as a condition precedent to their admissibility by "evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  For authentication under Rule 901(a), the proponent of the evidence must only present "sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be."  United States v. Belfast, 611 F.3d 783, 819 (11th Cir. 2010).  Once a prima facie case is met, the evidence may be admitted, and the ultimate question of authenticity is decided by the jury.  Id.  A document may be authenticated through the testimony of a witness with knowledge or by "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances."  Fed. R. Evid. 901(b)(4).

Second, "hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801(c).  However, a statement is not hearsay if it is being offered against a party and is the party's own statement.  Fed. R. Evid. 801(d)(2)(A).  Likewise, such a statement is not hearsay if it is being offered against a party and the party has manifested that he adopted the statement or believed it to be true.  Fed. R. Evid. 801(d)(2)(B).

Finally, under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of" unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or the needless presentation of cumulative evidence. Fed. R. Evid. 403. Rule 403 should be invoked sparingly and the balance should be struck in favor of inadmissibility because it is an extraordinary remedy. Tinoco, 304 F.3d at 1120.

Mentor fails to demonstrate that there was no competent evidence to support the district court's conclusion that the letter had been sufficiently authenticated. See United States v. Munoz, 16 F.3d 1116, 1120–21 (11th Cir. 1994). The district court heard sufficient testimony to make out a prima facie case that the letter Dormevil received was from Mentor as the government purported it to be. See Belfast, 611 F.3d at 819; Fed. R. Evid. 901(b)(1). Because the government made out a prima facie case that the letter was dictated by Mentor, it was up to the jury to decide whether the letter was actually from Mentor. See Belfast, 611 F.3d at 819.

Mentor's hearsay argument also fails. First, Mentor's argument that the letter was improperly admitted into evidence under the adoptive admission hearsay exception pursuant to Rule 801(d)(2)(B) is irrelevant because the letter was not admitted into evidence as an adoptive admission under Rule 801(d)(2)(B). It was instead the statement of Politesse that was admitted on this basis. Also, since the letter was Mentor's own statement, it cannot be an adoptive admission. See United

8

States v. Joshi, 896 F.2d 1303, 1311 (11th Cir. 1990); Fed. R. Evid. 801(d)(2)(B). Second, Mentor's letter was non-hearsay as an admission by a party opponent. See Fed. R. Evid. 801(d)(2)(A). On appeal, Mentor has raised no argument that the letter was improperly admitted under this hearsay exception, and thus the issue is abandoned. See United States v. McKinley, 732 F.3d 1291, 1298 n.4 (11th Cir. 2013) (per curiam).

Before the district court, Mentor never argued that the letter should have been excluded from evidence under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice. Because Mentor did not object based on Rule 403, we review this argument for plain error. See Turner, 474 F.3d at 1275.

The district court's admission of Mentor's letter was not plain error. In the letter, Mentor requested that Dormevil fabricate evidence. Mentor's request that she fabricate evidence by taking a picture of herself wearing a certain hat at a gun range after Politesse told the police that Mentor was wearing that hat at the time of crime was probative as to his state of mind and knowledge. It was also probative because it showed Mentor's belief that at least a portion of Politesse's statement and testimony was true. Contrary to Mentor's argument on appeal, any prejudice to him did not substantially outweigh this probative value. Mentor's only allegation of prejudice was that there was no evidence that he actually wrote or

dictated the letter and that there was no evidence of what the letter truly meant. However, our review of the evidence discussed above persuades us that the government submitted sufficient evidence to authenticate the letter and establish a prima facie case that Mentor dictated the letter.

### III.

Finally we address Mentor's argument regarding joinder. He argues that his robbery/homicide counts were improperly joined under Fed. R. Crim. P. 8(a) with his fraud counts because the two schemes were of substantially different character and category, unrelated in evidentiary foundation, and causally unconnected. Alternatively, even if the counts were properly joined, he argues they should have been severed under Rule 14 because the joinder of the offenses was highly prejudicial to him.

In determining whether separate offenses were properly joined under Rule 8, we undertake a two-part analysis. United States v. Walser, 3 F.3d 380, 385 (11th Cir. 1993). First, we review de novo whether joinder was proper under Rule 8(a), which is broadly construed in favor of joinder. Id. Next, we determine whether "the district court abused its discretion by denying the motion to sever." Id. We "will not reverse the denial of a severance motion absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection." Id.

The robbery/homicide counts and the fraud counts were properly joined. The government alleged and presented evidence at trial that the robbery/homicide and access device fraud/aggravated identity theft counts were a part of one overall scheme. The indictment alleged that Mentor and Politesse stole the postal key from the postal worker to get personal information from locked mailboxes and then use that information to file false tax returns to receive false tax refunds on debit cards. And there was testimony at trial that Mentor and Politesse did these things. While Mentor and Politesse may have had other ways of getting this identifying information prior to the robbery/homicide on December 6, 2010 and were previously involved in committing fraud, this does not mean that the counts were improperly joined or that the postal key was not stolen in order to further their access device fraud/aggravated identity theft scheme.

The district court also did not abuse its discretion in refusing to sever the robbery/homicide counts from the fraud counts. Mentor only advanced conclusory allegations of prejudice and failed to satisfy his heavy burden of showing compelling prejudice. See Walser, 3 F.3d at 386. Mentor makes no argument that he was prejudiced because the government was allowed to admit evidence at trial that would have been inadmissible had the counts not been joined. "[T]he fact that one illegal activity provides the impetus for the other illegal activity is sufficient to

11

constitute a common scheme for joinder purposes."  United States v. Dominguez,

226 F.3d 1235, 1239 (11th Cir. 2000).  Thus, we affirm in this respect.

## IV.

Mentor's convictions are **AFFIRMED**.